792 So.2d 1176 (2001)
Robert Brian WATERHOUSE, Appellant,
v.
STATE of Florida, Appellee.
No. SC95103.
Supreme Court of Florida.
May 31, 2001.
Rehearing Denied August 23, 2001.
*1179 John W. Moser, Capital Collateral Regional Counsel, and Joseph T. Hobson, Assistant CCRC, Jack Crooks, Assistant CCRC and Eric Pinkard, Assistant CCRC, Office of Capital Collateral Regional Counsel, Middle, Tampa, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Candance M. Sabella, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Robert Brian Waterhouse appeals the trial court's summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850.[1] We have jurisdiction. See Art. V, § 3(b)(1), Fla. Const. For the reasons detailed below, we affirm the trial court's order denying postconviction relief.

I. PROCEDURAL HISTORY
In August 1980, Waterhouse was convicted and sentenced to death for the first-degree murder of Deborah Kammerer.[2] The underlying facts and the evidence presented at trial are set forth in great detail in Waterhouse v. State, 429 So.2d 301 *1180 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983), wherein we affirmed both his conviction and sentence.
Thereafter, Waterhouse filed his first motion for postconviction relief pursuant to rule 3.850 in the trial court, along with a petition for a writ of habeas corpus in this Court. The lower court denied the motion. This Court combined the appeal from the denial of the 3.850 motion and the habeas corpus petition. Reasoning that the trial court erred in its failure to instruct upon, and allow the jury to consider, evidence of nonstatutory mitigating circumstances,[3] we vacated the death sentence, and remanded to the trial court for a new penalty phase. See Waterhouse v. State, 522 So.2d 341, 344 (Fla.), cert. denied, 488 U.S. 846, 109 S.Ct. 123, 102 L.Ed.2d 97 (1988).
At this second penalty phase, the jury once again recommended,[4] and the circuit court imposed, the death penalty.[5] Waterhouse then filed a direct appeal of the newly imposed death sentence.[6] We again affirmed the imposition of the death penalty. See Waterhouse v. State, 596 So.2d 1008 (Fla.1992), cert. denied, 506 U.S. 957, 113 S.Ct. 418, 121 L.Ed.2d 341 (1992).[7]
In November 1994, Waterhouse filed a 3.850 motion for postconviction relief, his *1181 first 3.850 motion after the second penalty phase proceeding. On January 22, 1998, after conducting a Huff[8] hearing, the trial court summarily denied all of the claims presented in Waterhouse's 3.850 motion. Waterhouse now appeals the denial of seven of those claims.[9]

II. ANALYSIS
At the outset, we dispose of several claims because they are either procedurally barred, facially or legally insufficient, or clearly without merit as a matter of law.[10] We now turn to address the remainder of the claims.

*1182 A. Ineffective Assistance of Counsel
To establish a claim of ineffective assistance of counsel, a defendant must demonstrate two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Rutherford v. State, 727 So.2d 216 (Fla.1998). The Strickland Court added that in establishing prejudice:
The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
466 U.S. at 694, 104 S.Ct. 2052. Additionally, and because the Strickland standard requires establishment of both prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong. See 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."); see also Downs v. State, 740 So.2d 506, 518 n. 19 (Fla.1999) (finding no need to address prejudice prong where defendant failed to establish deficient performance prong); Kennedy v. State, 547 So.2d 912, 914 (Fla. 1989) (noting that where defendant fails to establish prejudice prong court need not determine whether counsel's performance was deficient).

1. Failure to Investigate and Prepare Case
This claim was presented below only as a general ineffective assistance of counsel claim without any supporting facts. In fact, Waterhouse's initial brief to this Court candidly admits the omission.[11] Because a defendant seeking collateral relief on the basis of ineffective assistance of counsel bears the responsibility of alleging specific facts which demonstrate a deficiency in performance which prejudiced the defendant, see Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995), and because the defendant in this case failed to include factual allegations in support of this claim, the trial court correctly determined that an evidentiary hearing was not warranted because the claim was facially insufficient.
Notwithstanding this finding, the factual allegations which were incorporated into the appellant's brief submitted to the Court would not have warranted an *1183 evidentiary hearing had they been included in the 3.850 motion. Specifically, Waterhouse now alleges that trial counsel failed to locate the following witnesses: (1) David Van Buren, (2) Randy Winstead, (3) a woman whom he only knew by first name, and (4) a man who worked with the defendant. Despite Waterhouse's claim to the contrary, it is abundantly clear that Waterhouse sought these witnesses in an effort to further his relentless quest to relitigate guilt issues. Waterhouse specifically asserts that David Van Buren and Randy Winstead would have testified that on two separate and unrelated occasions they entered the defendant's vehicle while bleeding due to cuts and being involved in fights, thereby providing an unincriminating reason for the blood that was found in Waterhouse's vehicle. Evidence that the blood found in the defendant's car came from another source is clearly a matter relating to the defendant's guilt. Moreover, David Van Buren was actually presented as a witness for the State, and was cross-examined by defense counsel regarding the cut on his leg which caused him to bleed inside the defendant's car. Therefore, as the claim pertains to Van Buren, it is clearly refuted by the record. As to the other witnesses, while Waterhouse does not specifically identify the woman referred to or what evidence she would have provided, he does allege that a man who worked with him would have provided him with an alibi. Clearly, these witnesses would have all testified with regard to guilt phase issues which were not subject to consideration during the proceedings directed only to penalty. Accordingly, an evidentiary hearing on this claim would have been properly denied even if Waterhouse had included in the 3.850 motion the factual allegations he incorporated into his brief to the Court.

2. Failure to Present Mitigating Evidence/Failure to Obtain a Mental Health Professional Who Would Conduct a Competent Evaluation
Waterhouse next maintains that his defense attorney was ineffective in failing to bring forth mitigating evidence and in failing to retain a mental health expert who would have conducted a competent evaluation. It is necessary to understand, however, that it was Waterhouse himself who elected not to present mitigating evidence and who refused to meet with the mental health expert. We noted the same in our opinion on direct appeal from the resentencing:
Although we later vacated Waterhouse's death sentence in order to allow him to present nonstatutory mitigating evidence, Waterhouse refused to allow the presentation of mitigation evidence at resentencing. Thus, this case stands in the same posture as it stood on direct appeal when the death sentence was upheld.
Waterhouse, 596 So.2d at 1018 n. 6.
In Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993), quoted with approval in Chandler v. State, 702 So.2d 186, 199 (Fla.1997), we outlined the procedure which must be followed when a defendant waives the presentation of mitigating evidence. The procedure was detailed as follows:
Counsel must inform the court on the record of the defendant's decision. Counsel must indicate whether, based on his investigation, he reasonably believes there to be mitigating evidence that could be presented and what that evidence would be. The court should then require the defendant to confirm on the record that his counsel has discussed these matters with him, and despite counsel's recommendation, he wishes to waive presentation of penalty phase evidence. *1184 Koon, 619 So.2d at 250. The underlying purpose for this framework is to protect against "the problems inherent in a trial record that does not adequately reflect a defendant's waiver of his right to present any mitigating evidence." Id. Although Koon is technically inapplicable to this case because the penalty phase proceedings below occurred some three years prior to the Koon decision becoming final, see Allen v. State, 662 So.2d 323, 329 (Fla. 1995) (noting that ruling in Koon was prospective); Elam v. State, 636 So.2d 1312, 1314 (Fla.1994)(same), it should be noted that a review of the record in this case demonstrates that the end sought by the Koon decision (i.e., a clear record as to defendant's waiver of the presentation of mitigating factors) was actually accomplished in this case. That is, Waterhouse made it abundantly clear that he was waiving his right to present mitigating evidence. Specifically, Waterhouse unequivocally asserted:
Mr. Hoffman could have presented at least a half a dozen factors in mitigation, but I wouldn't let him do that because I don't feel that he should be up here begging you.
I shouldn't be up here begging you for my life.
It goes against my moral principals [sic] and, furthermore, spares my family the embarrassment, the trauma.
Moreover, this was not simply a case where a defense attorney latched on to a defendant's refusal to present mitigating evidence. The evidence in support of mitigation had already been investigated and accumulated as part of Waterhouse's previous collateral and habeas proceedings. In fact, the record in this case includes the affidavit of Dr. Fred S. Berlin, who concluded that Waterhouse may have been under the influence of an extreme emotional disturbance at the time of the commission of the crime and that this may have impaired his capacity to conform his conduct to the requirements of the law.[12] Defense counsel had also obtained the necessary paperwork to bring Waterhouse's brother from Louisiana, but Waterhouse indicated that if that were done, he would contact his brother and tell him to avoid the proceedings. Additionally, after the trial court appointed Dr. Charles H. Wheaton to examine Waterhouse for the possibility that he might suffer from organic brain damage, Waterhouse refused to meet with the doctor.
Accordingly, because the only reason why mitigating evidence was not presented was entirely due to Waterhouse's own conduct, we cannot deem defense counsel deficient for failing to present such evidence. Thus, we conclude that the trial court correctly denied an evidentiary hearing as to this claim.

3. Failure to Make a Closing Argument
The trial court below denied an evidentiary hearing on this claim, reasoning that this issue had already been resolved by this Court on direct appeal. The particular issue addressed by us on direct appeal was whether Waterhouse was denied the right to counsel based on defense counsel's failure to make a closing argument. See Waterhouse, 596 So.2d at 1011. We concluded that he was not. See id. at 1014. Although Waterhouse now frames the issue as one of ineffective assistance of counsel, the appellant is merely trying to relitigate the same issue using different words. See, e.g., Harvey v. Dugger, 656 *1185 So.2d 1253, 1256 (Fla.1995) (finding it inappropriate to use a different argument to relitigate the same issue); Turner v. Dugger, 614 So.2d 1075, 1077 (Fla.1992) (same).
In any event, our ultimate conclusion (i.e., that Waterhouse was not denied the effective assistance of counsel) and reasoning on direct appeal are totally dispositive of whether defense counsel was ineffective in not making a closing argument. Specifically, in addressing this issue on direct appeal, we noted:
An awareness of the events preceding the closing argument is necessary to an understanding of this claim. At the outset, it should be noted that several lawyers had previously withdrawn from representing Waterhouse because of his refusal to cooperate with them. During the proceedings below, Waterhouse and his counsel, Mr. Hoffman, began to differ about trial strategy. Prior to the resentencing hearing, Hoffman sought to withdraw because Waterhouse did not wish him to put on any evidence in mitigation and insisted that he present a lingering doubt defense. Because this Court has held that lingering doubt is not an appropriate nonstatutory mitigating circumstance, Hoffman recognized that he could not ethically pursue this course of action. Hoffman protected the record to make clear that Waterhouse desired to present such a defense.
During the resentencing hearing, Waterhouse made various complaints about Hoffman, but it was clear that he was not seeking to represent himself. The court found Waterhouse's accusations against Hoffman to be unfounded and observed:
THE COURT: Well, I'm not going to let him control this case by discharging a lawyer that's appointed for him on the eve of the trial. It is obvious to me that he has been doing this over the years purely for the purpose of delay, and I'm not going to let that happen.
As far as I'm concerned, Mr. Hoffman, you're on the case. I know it's tough for you. If he wants to dictate the terms of your representation and make it impossible for you to present a defense in mitigation, that's his choice. If he's done that, he has only himself to blame.
In the middle of the resentencing hearing, Hoffman advised the court that Waterhouse once again was complaining about his representation because he had not gone far enough in trying to relitigate the guilt issue. The court observed that Hoffman was providing effective representation. However, the court stated that if Waterhouse insisted, he would permit him to take over the trial but would keep Hoffman present so as to provide legal advice if requested. The court then asked Waterhouse whether or not he was discharging Hoffman and proceeding on his own:
THE DEFENDANT: Will he remain as advisory counsel?
THE COURT: What?
THE DEFENDANT: Will he remain as advisory counsel? That will be all?
THE COURT: That's right. But he won't be participating. If you have a question, you'll take it up with him, but you're on your own.
MR. CROW [Prosecutor]: I think what he's trying to indicate is he doesn't want Mr. Hoffman in an advisory capacity.
THE COURT: I'll have him here available. He doesn't have to consult with him. He doesn't have to talk to him. If he doesn't have any questions *1186 to ask him, then obviously his advisory capacity is for naught; but he will be available to him. He will not be participating in the trial and Mr. Waterhouse will be handling the rest of this case on his own.
THE DEFENDANT: What I'm actually trying to get at is will he have to be present in the courtroom?
THE COURT: Doesn't have to be if you don't want him. We can have him sit outside. That's kind of a stupid place to put him if he's going to try and advise you on what he heard in here.
THE DEFENDANT: Doesn't seem to matter where he is. We'll let it go.
THE COURT: I'm sorry?
THE DEFENDANT: Excuse me. Let it go.
THE COURT: Let it go. In other words, he will continue as your lawyer?
THE DEFENDANT: The railroad train is running, your Honor.
THE COURT: I take it that you are accepting him as your lawyer?
THE DEFENDANT: Excuse me?
THE COURT: Pardon?
THE DEFENDANT: I didn't hear what you said.
THE COURT: He is your lawyer, is that correct?
THE DEFENDANT: Not by much.
THE COURT: Over your objection.
THE DEFENDANT: On paper. He's doing nothing, your Honor.
THE COURT: I didn't ask you that. Answer the question, please.
THE DEFENDANT: I would respectfully refuse.
THE COURT: Okay. Bring in the jury. Mr. Hoffman continues to remain as the lawyer.
At the close of the State's testimony, Hoffman made clear that Waterhouse refused to allow him to put on any mitigating evidence. Hoffman also indicated that Waterhouse wanted to address the jury in closing argument. The judge advised Waterhouse that this would not be a good idea because much of what he proposed to say would probably be stricken on objection. However, the judge said that if Waterhouse wished to do so, he would permit him to make the closing statement, even though Hoffman remained in the case. This is reflected in the following colloquy:
THE COURT: Let me interrupt you for a minute. Here's what I'm going to do. Just so he'll have no complaint. You're still in the case. He can say anything he wants. I'll rule on the objections.
MR. HOFFMAN: I think that's fair, Judge.
THE COURT: It's my observation that he is not best served by doing that, but if the result is adverse to him, he can't be heard to complain I didn't allow him to make a statement.
MR. HOFFMAN: It may take a little preparation time, I would assume.
THE COURT: You can come back at one o'clock. We've still got to resolve the instructions.
After the recess and the jury charge conference, Hoffman announced that Waterhouse would be making the closing argument. The prosecutor then presented his closing argument. Thereafter, the court took a ten-minute recess. When the trial resumed, Waterhouse stated that he would like Hoffman to make the closing argument. Hoffman *1187 responded that Waterhouse was still insisting that he make a lingering doubt argument and that he felt that he could not do this because it would be unethical. The following colloquy then occurred:
MR. HOFFMAN: The posture I've decided to take on this, right or wrong, is that he can't now force me to make what I feel is an ineffective representation in closing argument by reneging on his previous statements.
And in light of the fact that he's not allowed me to put on any mitigation case, he's absolutely not allowed any mitigation case.
So, there really isn't much to talk about. And rather than do that and make a half hearted attempt and skirt the issue of ethical bounds with regard to whether or not I can talk about the guilt issue, I would rather leave him to do what he said he wants to do.
And if that turns out to be wrong and he turns out to get another trial
THE COURT: Well, you can always talk about the seriousness of the recommendation and it requires not taking it light.
That certainly is a matter that can be argued to the jury.
I mean, that's
MR. HOFFMAN: That's about the only thing; I mean, just get up and ask the jury what I did in opening statement; I can reiterate everything I said in opening.
THE COURT: The question to you, Mr. Waterhouse, is do you want Mr. Hoffman to make the closing argument within the confines of the penalty, not the guilt or innocence of a homicide?

MR. WATERHOUSE: Well, your Honor, Mr. Hoffman, as you know, and I have had a veryyou can't even call it a rocky relationship, it's not even that good.
He's been to see me once
THE COURT: Well, I'm notI've heard this for the last year.
MR. WATERHOUSE: I have not had a chance to sit down with him and explain to him the things that I want to put forth in mitigation at the closing.
He's only been over there once, and all we discussed
THE COURT: Well, the description of your relationship with Mr. Hoffman is one of your own doing, not of his.
MR. HOFFMAN: Judge, what he's doing now is back to what we already talked about, that I didn't want mitigating things put before the jury.
I mean, people were here to do it. The four items that were in the previous case
THE COURT: Well, I'm going to ask this question one last time.
If I don't get an answer, you're proceeding on your own, Mr. Waterhouse.
Do you want Mr. Hoffman to make the closing statement for you within the confines of the recommendation of either death or life imprisonment or not, and not make an argument on your guilt or innocence of the homicide; yes or no?
MR. WATERHOUSE: Your Honor, the problem issee, I am not an attorney, I do not know the law fully, what you're talking about.
That's why I need to get together
THE COURT: Yes or no?

*1188 MR. WATERHOUSE:with Mr. Hoffman in order so we could prepare for this, so he could tell me that this is admissible and this is not.
We haven't got together on it.
THE COURT: Yes or no?
MR. WATERHOUSE: No.
THE COURT: Bring in the jury.
(Emphasis added.)
We do not find that Waterhouse was denied his right to counsel by these actions. Waterhouse initially indicated on the record that he wished to make the closing argument. He reneged on that at the last possible minute. At that point, Hoffman did not refuse to make closing argument. He was simply unwilling to make the argument that Waterhouse demanded because he felt it would be unethical. Waterhouse rejected the choice of a closing argument by counsel confined to the appropriate issues. Under the facts of this case we do not find that Waterhouse was denied his right to counsel. "[A] defendant may not manipulate the proceedings by willynilly leaping back and forth between the choices [of self-representation and appointed counsel]." Jones v. State, 449 So.2d 253, 259 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984). We refuse to permit an intransigent defendant to completely thwart the orderly processes of justice.
Waterhouse, 596 So.2d at 1011-14 (alterations in original).
It is axiomatic that the right to counsel necessarily involves the right to effective counsel. See Strickland, 466 U.S. at 686 104 S.Ct. 2052 (quoting McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ("[T]he right to counsel is the right to the effective assistance of counsel.")). Thus, implicit in a finding that a defendant was not denied the right to counsel by his attorney's failure to present a closing argument based on inappropriate factors is that counsel was not ineffective in failing to make such argument. Based on our determinations on direct appeal, we conclude that counsel was not ineffective in failing to present a closing argument on Waterhouse's behalf under these circumstances, and that the trial court correctly denied an evidentiary hearing on this claim.

4. Failure to Rebut the "During the Commission of a Sexual Battery" Aggravator
In this claim, Waterhouse alleges that defense counsel was ineffective in that he failed to rebut the "during the commission of a sexual battery" aggravator. Because we conclude that this claim is conclusively refuted by the record, we affirm the trial court's summary denial of this subclaim. Specifically, on direct appeal, this Court noted:
Waterhouse was not precluded from challenging the State's evidence that a sexual battery occurred or from presenting evidence that a sexual battery did not occur. Our review of the record indicates that the court afforded Waterhouse and his counsel considerable leeway in cross-examining State witnesses on the evidence of sexual battery.
Waterhouse, 596 So.2d at 1015. Defense counsel fully utilized the trial court's considerable leeway, and extensively cross-examined the forensic pathologist who testified during the proceedings. Particularly, defense counsel questioned the doctor and established that although an enzyme which indicates the presence of semen was found inside the victim's rectum, no sperm cells were actually discovered. This was relevant because, as the pathologist testified, semen is the "carrier" of sperm cells. Defense counsel also cross-examined the forensic pathologist regarding the origin of *1189 the enzyme that was found in the victim's rectum; the possibility that the salt water in which the victim's body had been emerged might have skewed the results relating to the enzymes that were found; and that a chemical found inside the victim's rectum which is associated with a person whose blood type is B may exclude the defendant as the secretor of the fluids found there. Moreover, defense counsel cross-examined the forensic serologist who examined a Coca-Cola bottlewhich the State theorized was inserted into the victim's rectumfound inside the defendant's vehicle. Through cross-examination, defense counsel established that although the insertion of a Coca-Cola bottle into the victim's rectum would have caused serious bleeding, the bottle found in defendant's car did not have any traces of blood. Because we conclude that this claim is conclusively refuted by the record below, we affirm the trial court's denial of an evidentiary hearing as to this claim.

5. Failure to Object to the Use of an Illegally Obtained Incriminating Statement
On direct appeal, Waterhouse challenged the admission of a statement he made while in custody, to wit, "You do what you have to do to protect Bobby Waterhouse. No one wants to go to jail." Waterhouse, 429 So.2d at 307. We have previously concluded that although any error in the statement's admission had not been preserved by counsel for review
the statements could have had no significant impact on the jury's sentencing recommendation because Waterhouse's guilt of the murder was not at issue. Thus, at most, the admission of these statements would be harmless error.

596 So.2d at 1016-17 (citations omitted) (emphasis supplied). In so holding, we have already expressed our view that the admission of this statement did not prejudice Waterhouse. Thus, this claim fails to satisfy the prejudice prong as set forth in Strickland; accordingly, no evidentiary hearing was warranted.

6. Failure to Object to Improper Comments by the Prosecutor[13]
Assuming, arguendo, that comment (1) was improper, and further assuming *1190 that defense counsel was deficient in failing to object, Waterhouse has failed to establish that he was prejudiced by this statement. The statement concerns evidence which was properly presented to the jury in support of the prior conviction of a violent felony aggravator. Moreover, given the aggravating factors which this Court has already determined to be supported by the evidence (i.e., HAC, during the commission of a sexual battery, prior conviction of a violent felony; and committed while under a sentence of lifetime parole), the lack of mitigating evidence, and the unanimous death recommendation by the jury, we find that there is no reasonable probability that had counsel objected to the statement the result of the proceedings would have been different. Because Waterhouse failed to make a showing of prejudice, the trial court appropriately denied an evidentiary hearing as to this claim.
With respect to comment (2), this Court, on direct appeal, resolved the substantive issue which forms the basis for this ineffective assistance of counsel claim. More specifically, we noted that the "complained-of remark is not fairly susceptible of being interpreted as a comment on silence." Waterhouse, 596 So.2d at 1017. Resultantly, defense counsel could not have been deficient in failing to object because, contrary to Waterhouse's assertions, the comment was not an improper inference on the defendant's right to remain silent.
Next, Waterhouse contends that comments (3), (4) and (5) improperly diminished the jury's sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 341, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (finding that jury must be fully advised of the importance of its role and neither comments nor instructions may minimize the jury's sense of responsibility for determining the appropriateness of death). Again, assuming that the comments were improper and that counsel was ineffective in failing to object, Waterhouse has failed to demonstrate how he was prejudiced by the jury having heard these comments. That is, Waterhouse has not established that had counsel objected to these comment and had the judge admonished the jury that they were to disregard the comments, there is a reasonable probability that the jury would have recommended life imprisonment. To this end, we must again note that the jury in this case recommended death by a vote of 12 to 0 after weighing numerous aggravating factors which were established beyond a reasonable doubt against no evidence in terms of mitigation. Accordingly, there is no reasonable probability that, but for the admission of these statements, the jury would have recommended life imprisonment; thus, we conclude that the trial court appropriately denied an evidentiary hearing as to the issues relating to this claim.
Finally, in challenging comment (6), Waterhouse asserts that his attorney was ineffective in failing to object to a prosecutorial comment regarding sympathy toward the defendant because the comment impermissibly informed the jury that sympathy should not play a role in their determination. We have, however, on numerous occasions, decided this issue adversely to Waterhouse's position. For example, *1191 in Teffeteller v. Dugger, 734 So.2d 1009, 1028 (Fla.1999) (citing Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)), we noted that a prosecutor may properly argue that sympathy towards a defendant is an inappropriate consideration. See also Zack v. State, 753 So.2d 9, 23-4, (Fla.), cert. denied, 531 U.S. 858, 121 S.Ct. 143, 148 L.Ed.2d 94 (2000); Hunter v. State, 660 So.2d 244, 253 (Fla. 1995); Hitchcock v. State, 578 So.2d 685, 689 (Fla.1990), vacated on other grounds, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Accordingly, the trial court correctly denied an evidentiary hearing on this claim as it is without merit.

7. Failure to Impeach Essential State Witness Kenneth Young with Available Information
During the last penalty phase below, State witness Young provided damaging testimony relating to an incident which occurred while he and Waterhouse were both in the Pinellas County Jail. The record as to this incident indicates that while harassing a young man who had just been brought into the jail, Waterhouse pulled out a make-shift knife and began threatening the young man with the weapon. Appellant then ordered everyone out of the cell block, and after repeated pleas for help from the young man, Waterhouse eventually left him alone. As he was walking out of the cell block Waterhouse mumbled, "I wonder how he'd like a Coke bottle up his ass like I gave her."
Because we ultimately determine that the allegations presented in connection with this claim are conclusively refuted by the record, we affirm the trial court's denial of an evidentiary hearing as to this assertion. Specifically, Waterhouse maintains that his counsel was ineffective in failing to confront Kenneth Young with information that Young had sought favorable treatment from the State on his pending charges in exchange for testimony against Waterhouse. The trial court record indicates the opposite.
During the cross-examination of Young in the penalty phase proceedings, the following exchange occurred between defense counsel and Young:
[Defense Counsel Hoffman]: Okay. At the time you were talking about around the 13th of July, 1980, you were in Pinellas County jail?
[Young]: Yes, sir, I was.
[Hoffman]: At that time had you been sentenced to all your charges?
[Young]: No, sir, I hadn't.
[Hoffman]: What?
[Young]: I was awaiting sentencing on attempted escape and contraband in the county jail.
[Hoffman]: Felony charges?
[Young]: Yes, sir.
[Hoffman]: Okay, I didn't write it down. How many times have you been convicted of a felony?
[Young]: All five of them were in a six month period, all in that same time.
[Hoffman]: So, the answer is five times convicted felon?
[Young]: Yes, sir.
. . . .
[Hoffman]: Isn't it true that at the time that you relayed this story about what Mr. Waterhouse is alleged to have said, you were working on a plea bargain, trying to do something with these cases you were not sentenced on?
[Young]: At the time that I told the investigators, no, sir.
[Hoffman]: You didn't have an attorney working on a plea bargain for you?
[Young]: When I told them, no, sir. Right after that the attorney started working with it.

*1192 [Hoffman:] So, until you told the State, then he didn't have anything to go to the State with for a plea bargain, is that what you mean?
[Young:] No, sir.
[Hoffman:] I'm sorry. You said he didn't go to the State to try to work a plea bargain until after you told this story.
[Young:] That's right, sir. After I told the story, the Court said that I should have an attorney and the Court appointed me an attorney.
. . . .
[Hoffman:] And what you're saying is that until you told this story, there wasn't anything to be used to plea bargain for you. There was nobody around to say, hey, I got this great client, I need a plea bargain for him?
[Young:] No, sir.
[Hoffman:] After you had told the story about Mr. Waterhouse, then they had something they could use?
[Young:] Yes, sir.
[Hoffman:] Okay. You got adjudicated on five different felonies, convicted as a felon on five, right?
[Young:] Yes, sir.
[Hoffman:] What was your ultimate punishment?
[Young:] Two and a half years.
[Hoffman:] Of what?
[Young:] Of incarceration in the state penal system.
. . . .
[Hoffman:] Isn't it true that your case resolution on these five felonies was postponed until after you testified?
[Young:] Yes, sir. I believe two, the last two were.
As is evident from this exchange, defense counsel sought to impeach Young's credibility by establishing that Young had provided favorable information to the State, that immediately after providing such information Young's attorney began to work on the terms of a plea bargain, and that resolution of Young's pending charges was postponed until after he testified at Waterhouse's trial. As such, Waterhouse's claim that defense counsel failed to diminish Young's credibility by confronting him with information relating to a possible deal between the State and Young is conclusively refuted by the record.

8. Failure to Move for Trial Judge's Recusal on the Basis of Prejudice Against Appellant
In this claim, Waterhouse asserts that Judge Beach, who has presided over this case since the initial trial in 1980, was prejudiced against him. More specifically, he argues that defense counsel was ineffective in failing to seek Judge Beach's recusal. As the sole basis for this assertion, Waterhouse relies on a statement made by Judge Beach to the Florida Parole and Probation Commission on May 28, 1981. The statement is referenced in the Post-Sentence Investigation Report prepared by the Commission and reads as follows: "Sentencing Judge, Robert E. Beach, commented that the subject is a dangerous and sick man and that many other women have probably suffered because of him." Florida Parole and Probation Commission, Post Sentence Investigation Report on Robert B. Waterhouse, May 28, 1981, at 3.
At the outset, it is necessary to understand the procedural requirements for filing a motion for recusal. See Rogers v. State, 630 So.2d 513, 515 (Fla.1993) ("Although the right to seek disqualification of a presiding judge is substantive in nature, the process governing disqualification is procedural...."). Pursuant to Rule of Judicial Administration 2.160(e), a motion for recusal must be filed "within a reasonable time not to exceed 10 days after discovery *1193 of the facts constituting the grounds for the motion."[14] Similarly, section 38.02, Florida Statutes (1999), dictates that a motion to disqualify must be filed within thirty days after the party learns of the grounds for disqualification.[15] Recently, in Asay v. State, 769 So.2d 974, 980 (Fla. 2000), we wrote, "Of course, if the conduct or statements occur after the trial, then the postconviction proceeding may be the first time the defendant can raise them in a motion to recuse." See also Rivera v. State, 717 So.2d 477, 481 (Fla.1998) (addressing merits of motion to disqualify based on the judge's letter to the clemency board); Jones v. State, 446 So.2d 1059, 1061 (Fla.1984) (addressing motion to disqualify judge from presiding over a postconviction proceeding on the merits where defendant's claim was based on statements made by the trial judge following the sentencing proceeding).
Waterhouse does not specify exactly which counsel rendered ineffective assistance in failing to seek the judge's recusal, thus we must analyze the claim as it relates to all stages of this particular case. First, defense counsel at the original trial in 1980 could not be deemed to be deficient for failing to seek Judge Beach's recusal because the statement which forms the basis for this claim was not made until after the first trial. The next time that Waterhouse appeared before Judge Beach was during the postconviction proceedings which began with the filing of a 3.850 motion in 1985 and culminated with our opinion released in 1988 (i.e., the decision which remanded for a new sentencing phase). Waterhouse was at that time being represented by Stephen B. Bright and Clive A. Stafford Smith. During this first postconviction proceeding, defense counsel should have been aware of the statement made to the Commission; therefore, if recusal was indeed warranted, that was the time to have requested such relief. See Asay, 769 So.2d at 979. Defense counsel, however, failed to seek Judge Beach's recusal at that time. Even assuming that defense counsel was ineffective in failing to move for recusal, this Court has repeatedly held that ineffective assistance of postconviction counsel is not a cognizable claim. See, e.g., State ex rel. Butterworth v. Kenny, 714 So.2d 404, 408 (Fla.1998) (citing Hill v. Jones, 81 F.3d 1015, 1025 (11th Cir.1996) (noting that there is no constitutional right to postconviction relief counsel and therefore ineffective assistance of postconviction relief counsel is not a cognizable claim)); Lambrix v. State, 698 So.2d 247, 248 (Fla.1996) (finding that claims of ineffective assistance of postconviction counsel do not present a valid basis for relief).
Waterhouse then appeared before Judge Beach at his new penalty phase in 1990. At that time he was represented by a new and different counsel. This attorney, like Mr. Bright and Mr. Stafford-Smith before him, did not seek the judge's recusal. This new counsel, however, unlike Mr. Bright and Mr. Stafford-Smith, may properly be the subject of an ineffective assistance of counsel claim. Thus, this claim must necessarily be in reference to the *1194 attorney providing representation during this 1990 proceeding.
As the claim relates to counsel in the 1990 proceedings, the attorney could not be deemed ineffective for failing to seek Judge Beach's recusal because any motion filed during the proceedings in 1990 would have been denied as untimely, or, in the alternative, the issue would have been deemed waived, given the fact that the motion should have been filed during the postconviction proceedings which began in 1985. See Asay, 769 So.2d at 980 (noting that when comment which forms basis for recusal occurs after the trial, postconviction proceedings provide the first opportunity in which recusal may be asserted). Further, even if the merits of the motion could or would have been addressed, Waterhouse's asserted basis for maintaining that Judge Beach was prejudiced against him would not have warranted the judge's recusal.
To warrant recusal, a motion for disqualification must concretely allege a well-founded, reasonable fear on the part of the defendant that he or she will not receive a fair trial before a particular judge. See Asay, 769 So.2d at 980; Rivera, 717 So.2d at 480-81; Jackson v. State, 599 So.2d 103, 107 (Fla.1992). We have further noted that a defendant's "subjective fears ... are not `reasonably sufficient' to justify a `well-founded fear' of prejudice." Arbelaez v. State, 775 So.2d 909, 916 (Fla.2000) (quoting Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986)). "The fact that the judge has made adverse rulings in the past against the defendant, or that the judge has previously heard the evidence, or `allegations that the trial judge had formed a fixed opinion of the defendant's guilt, even where it is alleged that the judge discussed his opinion with others,' are generally considered legally insufficient reasons to warrant the judge's disqualification." Rivera, 717 So.2d at 481 (quoting Jackson, 599 So.2d at 107).
Here, in accordance with well-settled procedures, the Commission sought comments from the sentencing judge. See Rivera, 717 So.2d at 481 ("As part of the official clemency process for at least the last few decades, the Parole Commission seeks comments from sentencing judges when considering clemency for any inmate, not only those with capital sentences." (footnote omitted)). While in Rivera we declined to adopt a bright-line rule as to the propriety of comments to the Commission, we reached our conclusion in that particular case on the basis that the comment did not constitute a prejudgment of any pending or future motions that the defendant might file, and that the comment was not made outside the official clemency process in a manner indicating a predisposed bias against the defendant. See 717 So.2d at 480-81 (finding following comment by judge to Commission did not warrant recusal: "I am inalterably opposed to any consideration for Executive Clemency and I believe the sentence of the court should be carried out as soon as possible."). Cf. Porter v. State, 723 So.2d 191, 194 (Fla.1998) (finding that recusal was warranted where judge twice overrode jury's life recommendation and stated to the Clerk of the Court that he had changed venue from Charlotte County to Glades County because there had been a lot of publicity and because Glades County "had good, fair minded people ... who would listen and consider the evidence and then convict the son-of-a-bitch" and judge later added that he would "send Porter to the chair"); Suarez v. Dugger, 527 So.2d 190, 192 (Fla.1988) (finding judge's extra-judicial comment to newspaper that "it's fine with me if this one is the first they actually do impose (immediately)" compelled judge's disqualification because *1195 statements were sufficient to warrant fear on defendant's part that he would not receive a fair hearing); Rucks v. State, 692 So.2d 976, 977-78 (Fla. 2d DCA 1997) (finding that defendant had well-founded fear where trial judge characterized case as "sickest situation" he had encountered in twenty-seven years as an attorney and judge); Fogelman v. State, 648 So.2d 214 (Fla. 4th DCA 1994) (concluding that judge should have recused himself after commenting that if the female victim of the sexual assault allegedly perpetrated by defendant had been his daughter, he would have killed the defendant himself).
In the instant case, as in Rivera, the comment to the Commission did not constitute a prejudgment of any pending or future motions that the defendant might file, and was not made outside the official post-sentence investigative process in a manner indicating a predisposed bias against the defendant. Given the facts in this case, the statement to the Commission indicates nothing more than the judge's opinion after having heard evidence relating to two exceedingly cruel and brutal murders of women who were sexually assaulted.[16] The circumstances of these murders, coupled with Waterhouse's own admission that he had a "problem with sex and violence," would lead any reasonable person to conclude that Waterhouse is a "dangerous and sick man." Moreover, nothing in this record indicates that Judge Beach was biased or prejudiced against Waterhouse. On the contrary, as we articulated in our opinion on direct appeal following the imposition of the death penalty for a second time, "Clearly, the trial court, the prosecutor, and his own attorney bent over backwards in trying to give Waterhouse the benefit of every legal right to which he was entitled." Waterhouse, 596 So.2d at 1014.
In light of the above circumstances, we do not conclude that any of the attorneys who have throughout the years represented Waterhouse, including counsel during the 1990 proceedings, were ineffective in failing to seek Judge Beach's recusal. Thus, the trial court's denial of an evidentiary hearing on this claim is affirmed.

B. CCP Instruction
In this claim, Waterhouse asserts that the "cold, calculated and premeditated instruction given to jury at the new penalty phase was unconstitutionally vague and overbroad." In Jackson v. State, 648 So.2d 85 (Fla.1994), this Court held that the then-standard CCP instruction was unconstitutional in light of the United States Supreme Court's decision in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (finding reversible error where either judge or jury considered an invalid aggravating factor in determination of death sentence).[17] We noted, however, that:
Claims that the instruction on the cold, calculated, and premeditated aggravator is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal.
Jackson, 648 So.2d at 90, quoted with approval in Brown v. State, 755 So.2d 616, 622 (Fla.2000). We have consistently adhered to this claim-preservation requirement. See, e.g., Pope v. State, 702 So.2d 221, 223-24 (Fla.1997) ("However, we have made it clear that claims that the CCP instruction is unconstitutionally vague are procedurally barred unless a specific objection *1196 is made at trial and pursued on appeal. The objection at trial must attack the instruction itself, either by submitting a limiting instruction or making an objection to the instruction as worded."); Walls v. State, 641 So.2d 381, 387 (Fla.1994) ("To preserve the error for appellate review it is necessary both to make a specific objection or request an alternative instruction at trial, and to raise the issue on appeal.").
Turning to the facts in this case, the record indicates that the CCP instruction given at the new penalty phase was the same instruction invalidated in Jackson. After a thorough review of the record, however, we determine that this claim was not properly preserved for review. That is, at the second penalty phase, defense counsel neither submitted a limiting instruction nor specifically objected that the CCP instruction was unconstitutionally vague, as our precedent requires. As a result, the claim that the CCP aggravator was vague or overbroad was not preserved for review on direct appeal.[18]
Within this claim, however, Waterhouse argues that defense counsel rendered ineffective assistance during this penalty phase proceeding by not objecting to the CCP instruction on vagueness grounds and by failing to submit a limiting instruction. In Downs v. State, 740 So.2d 506, 518 (Fla.1999), this Court rejected an identical argument and reasoned that because the CCP instruction given at the time of Downs' resentencing was the standard jury instruction which had been approved by this Court, see Brown v. State, 565 So.2d 304, 309 (Fla.1990), defense counsel could not be deemed ineffective, pursuant to Strickland, for not objecting. The same reasoning applies in this case since the CCP instruction given at Waterhouse's second penalty phase was the standard instruction, which had been held valid by this Court. Accordingly, defense counsel's performance was not deficient under the standards set forth in Strickland. See also Harvey v. Dugger, 656 So.2d 1253, 1258 (Fla.1995) (holding that counsel may not be deemed ineffective under Strickland for failing to object to jury instruction where this Court previously upheld validity of the instruction); Mendyk v. State, 592 So.2d 1076, 1080 (Fla.1992) ("When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel."). As a result, we determine that the trial court correctly denied an evidentiary hearing as to his claim.

III. CONCLUSION
In sum, we affirm the trial court's summary denial of all claims asserted in appellant's motion for postconviction relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and LEWIS, JJ., concur.
PARIENTE, J., concurs in result only.
QUINCE, J., recused.
NOTES
[1] This is Waterhouse's initial rule 3.850 motion after the death penalty was imposed at his second penalty phase in 1990.
[2] The jury recommended the death penalty by a vote of 12 to 0.
[3] Our rationale was premised on the United States Supreme Court's decision in Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), which constituted an intervening change in the law.
[4] The jury again voted for the death penalty by a vote of 12-0.
[5] The trial court found the following aggravating factors: (1) the defendant was under a sentence of lifetime parole at the time of the murder; (2) the defendant had been previously convicted of a violent felony (second-degree murder); (3) the defendant was engaged in the commission of a felony involving the use of violence (sexual battery); (4) the defendant committed the murder to eliminate the victim as a witness; (5) the crime was heinous, atrocious or cruel; and (6) the murder was committed in a cold, calculated and premeditated manner. The judge did not find any mitigating circumstances.
[6] Waterhouse alleged the following errors: (1) he was denied the right to counsel based on defense counsel's failure to make a closing argument during the second penalty phase and defense counsel's alleged conflict of interest; (2) the trial court erred in refusing to allow Waterhouse to consult with defense counsel before requiring him to present his own closing argument; (3) the trial court failed to conduct the inquiry required by Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), prior to allowing him to deliver his own closing argument; (4) the trial court erred in precluding him from challenging the State's claim that the murder occurred during the commission of a sexual battery; (5) the trial court erred in not answering two questions posed by the jury during deliberations; (6) the State made improper comments during the new penalty phase; (7) the State improperly introduced hearsay evidence relating to the New York murder of Ella Carter; (8) the trial court erred in allowing the State's pathology expert to testify as to the New York autopsy report; (9) the trial court erred in refusing to strike a juror for cause; (10) the trial court erred in admitting certain incriminating statements that violated Waterhouse's right to counsel; (11) the jury instructions failed to specify that each juror should make an individual determination as to the existence of mitigating circumstances; (12) the trial court improperly admitted gruesome photographs of the victim; and (13) the trial court erred in finding each aggravator.
[7] We decided each issue presented adversely to Waterhouses's position. We did, however, strike the avoiding arrest and CCP aggravators, concluding that the evidence was insufficient to support such elements. See Waterhouse, 596 So.2d at 1017. We added: "Nevertheless, we find beyond a reasonable doubt that the elimination of these two aggravating factors would not have resulted in a life sentence in light of the remaining valid aggravating circumstances and the lack of mitigating circumstances." Id.
[8] See Huff v. State, 622 So.2d 982 (Fla.1993).
[9] Waterhouse alleges that the trial court erred in summarily denying his claims that: (1) trial counsel rendered ineffective assistance based on (a) failure to investigate and prepare the case; (b) failure to present mitigating evidence and failure to obtain a mental health professional who would conduct a competent evaluation; (c) failure to make a closing argument; (d) failure to rebut the "in the course of a sexual battery" aggravator; (e) failure to object to the use of an illegally obtained incriminating statement; (f) failure to object to improper prosecutorial comments; (g) failure to impeach State witness Kenneth Young; (h) failure to move for trial judge's recusal on the basis of prejudice against the defendant; (2) the trial judge gave improper instructions as to (a) the burden of proof at the penalty phase and (b) majority vote; (3) the "in the course of a felony" aggravator is an unconstitutionally automatic aggravator; (4) Florida's capital sentencing statute is unconstitutional; (5) the CCP instruction is unconstitutionally vague; (6) the judge and jury improperly considered nonstatutory aggravating factors; and (7) he was denied a fundamentally fair trial due to the cumulative effect of the errors which occurred below.
[10] Claims (2)(a), (2)(b), (3), (4) and (6) are procedurally barred because they should have been raised on direct appeal. See, e.g., Sireci v. State, 773 So.2d 34, 40 n. 10 (Fla.2000); Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla. 1995).

Within claims (2)(a), 2(b) and (3), all of which are procedurally barred, Waterhouse seeks to circumvent the procedural bar as to the substantive claims by interjecting conclusory allegations of ineffective assistance of counsel for failure to raise an appropriate objection or otherwise preserve the issue for appellate review. We find these allegations to be legally and facially insufficient to warrant relief under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), because at no point has Waterhouse alleged how he was prejudiced by counsel's failure to object or raise the asserted error. See Sireci, 773 So.2d at 40 n. 11 (quoting Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989) ("A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.")).
Moreover, the substantive issues presented in claims (2)(a) and (3) are without merit as a matter of law. See, e.g., Downs v. State, 740 So.2d 506, 509 (Fla.1999) (citing Harvey v. Dugger, 656 So.2d 1253, 1257 (Fla.1995) (finding ineffective assistance of counsel claim based on counsel's failure to object to jury instruction that allegedly shifted burden to defense to establish that mitigators outweighed aggravators to be without merit as a matter of law)); Hudson v. State, 708 So.2d 256, 262 (Fla.1998) (rejecting argument that the murder in the course of a felony aggravator is an invalid automatic aggravator). Thus, even if Waterhouse had sufficiently alleged prejudice, counsel could not be deemed deficient for failing to object at trial. See Mendyk v. State, 592 So.2d 1076, 1080 (Fla.1992) ("When jury instructions are proper, the failure to object does not constitute a serious and substantial deficiency that is measurably below the standard of competent counsel.").
Similarly, claim (4), which is procedurally barred but which does not include any allegation of ineffective assistance of counsel (as is the case with claims (2)(a) and (3)), is also without merit as a matter of law. See, e.g., Knight v. State, 746 So.2d 423, 429 (1998) (rejecting claim that Florida's death penalty statute is unconstitutional); Fotopoulos v. State, 608 So.2d 784, 794 n. 7 (Fla.1992) (same).
Finally, Waterhouse asserts in claim (7) that he was denied a fundamentally fair trial due to the cumulative effect of the errors which occurred below. Because we determine that no errors occurred, we necessarily must conclude that this claim is also without merit. See, e.g., Downs v. State, 740 So.2d 506, 509 (Fla.1999) (concluding that where allegations of individual error do not warrant relief, a cumulative error argument based thereon is without merit).
[11] See Initial Brief at 12 n. 2 ("Counsel recognizes that the citations to the record referred to in this argument were not included in the 3.850 motion as required by the F.R.Crim. P.... In the interest of justice, counsel moves this Court to consider this portion of the record in evaluating this argument.")
[12] This affidavit was submitted in support of the habeas corpus petition seeking relief on the basis that Waterhouse had not been afforded an opportunity to present evidence of nonstatutory mitigating factors in violation of Hitchcock. We granted the relief sought. See Waterhouse, 522 So.2d at 344.
[13] The allegedly improper comments consisted of the following:

Comment (1): "But the evidence you have heard can give you the flavor for the overwhelming evidence of guilt that led to his conviction, but you also know what the jury did not know, some of the facts you know that they didn't know. They didn't know Mr. Waterhouse had murdered Ella Carter."
Comment (2): "Whether you have the defendant's blood or whether you have the victim's blood; the victim and the defendant's blood are almost the same thing; there is only one enzyme that separates them. Well, have you heard any testimony that Robert Waterhouse got beaten with a tire iron in his own vehicle? Absolutely not. There is absolutely no way that the blood came from anywhere except Deborah Kammerer's skull."
Comment (3): "[Y]ou are simply being asked to decide facts and to apply the law. Don't let anyone make you feel morally culpable or attack your understanding because the responsibility for Mr. Waterhouse's fate rest [sic] with him right here for the acts he has, himself, committed, and which have sealed his fate."
Comment (4): "In it's [sic] own right, sexual battery can lead to a sentence of life imprisonment. I suggest to you that when a person who commits a sexual battery makes that quantum leap, goes that extra step and not only commits a sexual battery but kills his victim, then doesn't justice ask for, doesn't justice demand, a penalty that's different in kind and different in quality from the punishment he already faces by the commission of the sexual battery alone?"
Comment (5): On several occasions, the prosecutor told the jury that its role was advisory; these comments will be referred to collectively as "comment (5)."
Comment (6): "Well, I point this out to everyone, sympathy is just a quality of human nature. And we all have sympathy in one form or another, either for or against the victim or for or against Mr. Waterhouse or not. And the judge will tell you that you just don't let sympathy play a part in your verdict, that you just have to take the coat of sympathy off and hang it outside based on what the evidence and law is; okay?"
[14] Rule 2.160 became effective on January 1, 1993. Prior to that date, judicial recusal was controlled by Florida Rule of Criminal Procedure 3.230. See Rogers, 630 So.2d at 515 n. 4 (noting that Florida Rule of Criminal Procedure 3.230 was repealed and replaced by Florida Rule of Judicial Administration 2.160, effective January 1, 1993). Both rules, however, contain the same 10 day time limitation on a motion for recusal.
[15] This statute seems to apply to judges hearing cases in "any of the courts of this state," § 38.02, Fla. Stat. (1999), whereas rule 2.160 applies exclusively to county and circuit court judges, see Fla. R. Jud. Admin. 2.160(e).
[16] The first being Ella Carter's murder in New York, and the second being Deborah Kammerer's murder.
[17] The instruction was as follows: "The crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without a pretense of moral or legal justification."
[18] The claim raised on direct appeal regarding the CCP aggravator related to the sufficiency of the evidence in support of this aggravating circumstance. See Waterhouse, 596 So.2d at 1017.