YATES, Judge.
Terry Wayne Knapp sued his employer, Mitternight Boiler Works, Inc., seeking to recover workers’ compensation benefits for an injury he alleged he had sustained to his lower back on February 8, 1995, during the course of his employment. Following an ore tenus proceeding, the trial court found that Knapp had not proved legal and medical causation and entered an order denying benefits. Knapp appeals.
At the outset, we note that because of the date of Knapp’s alleged injury this case is governed by the new Workers’ Compensation Act. The new Act provides that an appellate court’s review of the proof and its consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81 (e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81 (e)(2), Ala.Code 1975. Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Industries, Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). Further, we “will view the facts in the light most favorable to the findings of the trial court.” Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App.1994). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
At the time of the hearing, Knapp was 34 years of age, a high school graduate, married, and the father of two children. He began his employment with Mitternight in January 1988. During the course of his employment, Knapp reported several work injuries, including injuries to his back. In 1990, he sustained a back injury during the course of his employment. Knapp reported the accident and received worker’s compensation benefits and medical expenses from Mitter-night. He was treated by Dr. James West, an orthopaedist, for lumbar strain. Approximately six weeks after the injury, Dr. West released Knapp to return to work, without restrictions and with no physical impairment being assessed. Objective tests performed by Dr. West indicated degenerative disc disease and mild scoliosis, but no disc herniation.
In January 1992, Knapp reported that he had injured his back at work when he “slipped off of a cherry picker”; however, he did not miss any work and did not seek medical treatment as a result of the reported incident.
In October 1992, Knapp’s back became sore during a weekend; he was treated for back pain by Dr. Stephen Cope, an orthopae-dist, and he missed approximately six weeks of work. Objective tests performed by Dr. Cope confirmed a herniated disc at L4-5. Dr. Cope released Knapp to full duty in December 1992, without restrictions and without assessing any permanent partial physical impairment. Knapp did not report a work injury and did not seek or receive worker’s compensation benefits.
In April 1994, Knapp reported a work injury to his back; however, he did not miss work and did not seek medical attention.
At various other times between 1992 and February 8, 1995, Knapp missed work as a *508 result of his back problem; however, he did not report any work-related back injury and did not seek worker’s compensation benefits.
On Monday, February 6, 1995, Knapp worked only a short while and then left work because of back pain; he did not report any work injury or allege any connection between his employment and his back pain when he left that day. In fact, he had told two of his co-workers that he had injured his back over the weekend while lifting one of his children into his truck. After leaving work, Knapp went to a chiropractor, Dr. John Wetzel, for treatment of his back pain. He advised Dr. Wetzel that he was in constant pain, that he had constant difficulty bathing and dressing, that he was frequently unable to sleep, and that it was difficult for him to engage in family care and household chores.
The next day, Knapp took a day of annual leave because of his back pain; and returned to Dr. Wetzel for further treatment. Upon leaving Dr. Wetzel’s office, Knapp scheduled an appointment to see him again the next day, February 8,1995.
On February 8,1995, shortly after arriving at work, Knapp was assigned to operate a cherry picker to move some materials inside the plant. He testified that as he was climbing onto the cherry picker, his back “went out,” causing him to fall to his knees. Knapp completed his assigned task, which took approximately 20 minutes, and then advised his foreman that he had hurt his back while climbing onto the cherry picker. Upon leaving work on February 8, 1995, Knapp told the plant supervisor that he would return when his back was better. He did not report any work injury to the supervisor. Knapp went directly to Dr. Wetzel’s office; he has not returned to work.
Knapp continued to see Dr. Wetzel several times a week from February 6, 1995, through the date of trial. Dr. Wetzel’s records for February 13, 1995, indicate that Knapp was showing improvement until he hurt his back again while trying to catch a pig on February 12,1995.
On February 13, 1995, Knapp telephoned the president of Mitternight and asked whether there was any light-duty work available. At no time during the conversation did Knapp indicate that he had injured himself on the job or inquire about workers’ compensation benefits.
In March 1995, Knapp’s wife contacted Mitternight’s insurance clerk and requested a form for her husband to apply for disability insurance. The clerk forwarded the necessary form. The clerk testified that Mitter-night’s disability insurance was not available for work-related injuries. She further testified that had she known that Knapp was claiming a work-related injury, she would not have forwarded the disability forms.
At all times pertinent to the alleged injury, Mitternight had in place a policy regarding medical treatment for work-related injuries; that policy was made known to the employees. In fact, Knapp had followed that policy in connection with his prior worker’s compensation claim. Mitternight’s policy with regard to medical treatment for work-related injuries was that the employee was to seek treatment from the company’s approved physician. Knapp did not seek medical treatment through the company-approved physician at any time between February 8, 1995, and the date of trial. Knapp’s medical expenses were paid, in part, by Mitternight’s group health insurer.
On February 17, 1995, Knapp visited Dr. Cope. He advised Dr. Cope that he had injured himself on February 8, 1995, while climbing onto a cherry picker, and that he had not been treated by any other medical provider since February 8, 1995. It was undisputed that Knapp had visited Dr. Wet-zel on numerous occasions between February 6, 1995, and February 17, 1995. Knapp did not tell Dr. Cope that he had hurt his back while lifting his children on the weekend of February 4, 1995, or that he had missed several days of work because of back pain between December 1992 and February 1995. Dr. Cope could not state with any reasonable degree of medical certainty that Knapp’s disc problems were caused from the alleged February 8,1995, work-related injury.
In March 1995, Knapp sought medical treatment from Dr. Russell Hudgens, an or-thopaedic surgeon. A discogram performed by one of Dr. Hudgens’s partners showed no *509 significant abnormalities or reproducible pain to indicate that a diskectomy would be helpful, but it showed what was consistent with degenerative disc problems. Dr. Hudgens testified in deposition that it was his opinion that Knapp had on September 5, 1995, reached maximum medical improvement from the alleged February 8, 1995, injury. He assessed Knapp with a 5% permanent physical impairment. Dr. Hudgens was not aware that Knapp’s back was causing him pain before February 8,1995.
Knapp’s vocational evaluations reveal that he has a 45% to 50% loss of earning capacity because of his back problems.
For an injury to be compensable under our Workers’ Compensation Act, the employee must establish both legal and medical causation. Ex parte Moncrief, 627 So.2d 385 (Ala.1993). “Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.” Id., at 388.
The court, questioning the truth of Knapp’s testimony, held that Knapp had not proved legal and medical causation, stating, in pertinent part:
“7. Based on the totality of the evidence, the Court concludes that [Knapp’s] back condition and current loss of earning ability did not arise out of and in the course and scope of [his] employment with [Mit-ternight].
“8. [Knapp] has failed to prove ‘legal causation.’ The evidence presented shows that [Knapp] told two co-workers on Monday February 6, 1995, that he injured his back over the weekend while picking up his child. There was no evidence indicating that [Knapp’s]activities with his child arose out of or occurred in the course and scope of his employment with [Mitter-night]. Further, the evidence shows that [Knapp’s] back condition was improving until February 12, 1995, when he had to catch his pig. There was no evidence indicating [that catching a] pig was a part of his work duty with defendant.
“9. [Knapp] has failed to sustain his burden of ‘medical causation.’ The uncontro-verted evidence shows that objective tests performed on [Knapp] in 1990 following a work injury to his back revealed no disc herniation. Further, the evidence shows that in 1992 [Knapp] was diagnosed with a herniated disc while undergoing treatment for back pain unrelated to his employment. Prior to the alleged work injury of February 8,1995, [Knapp] was wearing a TENS unit for back pain. He sought treatment from a chiropractor for back pain on February 6 and February 7, 1995, and made an appointment with his chiropractor for further treatment on February 8,1995, the same date [Knapp] now alleges he was injured at work. Records from the chiropractor indicate that on February 6, 1995, two days prior to the alleged accident which is the subject of this action, [Knapp] told the chiropractor that he had constant back pain as well as constant pain and inability to sleep, bath, dress, or engage in daily activities, household chores and family activities due to his back pain. Further the chiropractor’s records indicate that [Knapp’s] condition was improving, even after the alleged work accident of February 8,1995, until he had to catch his pig on February 12,1995.
“10. [Knapp’s] treating orthopaedist and orthopaedic surgeon could not testify to a reasonable degree of medical certainty that [Knapp’s] back pain was caused by the alleged work accident of February 8, 1995.
“11. The law is clear that a pre-existing condition does not preclude an employee from receiving worker’s compensation benefits if the employee was able to perform his duties prior to the subject injury. Jackson v. Comptronix Corp., 679 So.2d 1079 (Ala.Civ.App.1996); Graham v. American Cyanamid Co., 634 So.2d 581, 584 (Ala.Civ.App.1994). The evidence before the Court shows that [Knapp] was unable to perform his duties on the two consecutive work days prior to the date of the alleged injury and that the alleged accident occurred after [Knapp] had been at work for less than one hour on the date *510 of the alleged accident. [Knapp] has failed to prove that he was able to perform his duties prior to the subject alleged injury. In fact, the evidence taken as a whole clearly shows that [Knapp] was unable to perform his work duties prior to February 8,1995.
“14. When an employee’s degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer is liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed. Code of Ala. 1975, § 25-5-58; see also Code of Ala. 1975, § 25-5-57(a)(4)(e).
“15. Even if one assumes, arguendo, that [Knapp] did sustain an accident which occurred in the course and scope of his employment with [Mitternight] on February 8, 1995, as alleged by [Knapp], [Knapp’s] degree of disability has not increased as a result of same.
“16. As shown by the evidence presented herein, [Knapp] had a pre-existing infirmity which, in fact, prevented [Knapp] from engaging in his work activities for essentially two full days prior to the date of the subject accident. Further, ... a vocational specialist, testified that [Knapp’s] vocational impairment was related solely to conditions which pre-existed the alleged February 8, 1995, accident. Even if one assumes arguendo that [Knapp] was involved in an accident arising out of and in the course and scope of his employment on February 8, 1995, as alleged by [Knapp], the Court finds that [Knapp’s] disability and/or loss of earning ability was not increased as a result of same.
“19. Having considered the evidence, exhibits, and testimony as a whole, and based on the Court’s Findings of Fact, the Court finds that [Knapp] did not sustain an injury in the course and scope of his employment with [Mitternight] on or about February 8, 1995, as alleged by [Knapp]. Further, the Court finds that [Knapp’s] back pain and any resultant disability or loss of earning capacity did not arise out of and in the course and scope of [Knapp’s] employment and are not causally related to [Knapp’s] employment with [Mitter-night].”
After carefully considering the totality of the evidence and the circumstances of this case, along with the principles of law set out above, we conclude that the trial court’s findings of fact are supported by substantial evidence and that those findings support its conclusion. Accordingly, the judgment is affirmed.
AFFIRMED.
MONROE, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result only.