866 So.2d 688 (2003)
Edward ZAKRZEWSKI, Appellant,
v.
STATE of Florida, Appellee.
No. SC02-1734.
Supreme Court of Florida.
November 13, 2003.
Rehearing Denied February 4, 2004.
*689 Baya Harrison III, Monticello, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Cassandra K. Dolgin, Assistant Attorney General, Tallahassee, FL, for Appellee.
PER CURIAM.
Edward Zakrzewski was sentenced to death for the murder of his wife and two young children. This Court affirmed his death sentences on appeal. See Zakrzewski v. State, 717 So.2d 488, 490 (Fla.1998). Now in postconviction proceedings, Zakrzewski appeals the trial court order denying his motion for postconviction relief after an evidentiary hearing.[1] The four issues raised on appeal are whether (1) his lawyers in the penalty phase provided ineffective assistance of counsel by failing to object to certain closing arguments; (2) his lawyers were ineffective for failing to move to suppress evidence; (3) his guilty pleas were involuntary and should be set aside; and (4) his death sentence is unconstitutional based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We conclude that no error occurred in the trial court's denial of post-conviction *690 relief in this case and therefore affirm the trial court's order.

FACTS AND PROCEDURAL HISTORY
Zakrzewski pled guilty to the first-degree murders of his wife, Sylvia, and his two children, Edward and Anna. A penalty phase before a jury was held that established the following facts:
Zakrzewski and his wife had been experiencing marital problems for some time prior to the murders. Zakrzewski twice told a neighbor that he would kill his family rather than let them go through a divorce. On June 9, 1994, the morning of the murders, Edward called Zakrzewski at work and stated that Sylvia wanted a divorce. During his lunch break, Zakrzewski purchased a machete. He returned to work and completed his daily routine. That evening, Zakrzewski arrived home before his wife and children. He hid the machete in the bathroom.
After his family arrived home, Zakrzewski approached Sylvia, who was sitting alone in the living room. He hit her at least twice over the head with a crowbar. The testimony established that Sylvia may have been rendered unconscious as a result of these blows, although not dead. Zakrzewski then dragged Sylvia into the bedroom, where he hit her again and strangled her with rope.
Zakrzewski then called Edward into the bathroom to come brush his teeth. As Edward entered the room, Zakrzewski struck the boy with the machete. Edward realized what his father was doing and tried to block the blow with his arm, causing a wound to his wrist. Further blows caused severe head, neck, and back injuries, and resulted in death.
Zakrzewski then called Anna into the bathroom to brush her teeth. Zakrzewski testified that he hit the girl with the machete as soon as she entered the bathroom. The State's expert testified that the blood spatters from Anna show that the girl was kneeling over the bathtub when she was struck by the machete. Cuts were found on Anna's right hand and elbow, consistent with defensive wounds. The blows from the machete resulted in Anna's death. The evidence was in conflict as to whether Anna was aware of her impending death.
Finally, Zakrzewski dragged his wife from the bedroom to the bathroom. He still was not sure if she was dead, so he hit her with the machete. Sylvia died from blunt force injuries as well as sharp force injuries.
Following the murders, Zakrzewski drove to Orlando and boarded a plane bound for Hawaii. While in Hawaii, Zakrzewski changed his name and lived with a family who ran a religious commune. After he had been there four months, the family happened to watch the television show "Unsolved Mysteries," which aired Zakrzewski's picture. Zakrzewski turned himself in to the local police the next day.
Zakrzewski, 717 So.2d at 490-91.
At the conclusion of the penalty phase, the jury recommended the death penalty by a vote of seven to five for the murders of Sylvia and Edward, and recommended a sentence of life imprisonment for the murder of Anna. See id. at 491. The trial court found the same three aggravating factors with respect to each of the murders: (1) the defendant was previously convicted of other capital offenses (the contemporaneous murders); (2) the murders were committed in a cold, calculated, and premeditated manner without pretense of legal or moral justification (CCP); and (3) the murders were committed in an especially heinous, atrocious, or cruel manner *691 (HAC). See id. The trial court found two statutory mitigators: (1) no significant prior criminal history; and (2) the murders were committed while the defendant was under the influence of extreme mental or emotional disturbance. The trial court also found and weighed twenty-four nonstatutory mitigators. See id.[2] Finding that the aggravating circumstances outweighed the mitigating circumstances for each of the three murders, the trial court imposed three death sentences, following the jury's recommendation for the murders of Sylvia and Edward and overriding the jury's recommendation of a life sentence for the murder of Anna. See id.
On direct appeal, Zakrzewski raised nine issues. See id. at 492.[3] This Court concluded that the trial court erroneously found HAC with respect to Sylvia's murder but further concluded that the error was harmless beyond a reasonable doubt. See id. at 492-93. The Court rejected the remainder of Zakrzewski's arguments and affirmed the three death sentences. See id. at 495. The United States Supreme Court denied certiorari. See Zakrzewski v. Florida, 525 U.S. 1126, 119 S.Ct. 911, 142 L.Ed.2d 909 (1999).
Zakrzewski then filed a motion for postconviction relief under Florida Rules of Criminal Procedure 3.850 and 3.851, in which he raised the following claims: (1) trial counsel were ineffective for failing to move to suppress evidence seized from his home; (2) his guilty pleas were involuntary; *692 (3) he was denied a fair penalty phase before a panel of impartial, indifferent jurors; and (4) trial counsel were ineffective for failing to object to the State's improper and prejudicial closing argument. Subsequently, Zakrzewski filed an amendment to his postconviction motion, adding a claim that Florida's death penalty statute is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
Following a Huff[4] hearing, the circuit court held an evidentiary hearing on claims (1), (2) and (4).[5] The circuit court denied relief and Zakrzewski now appeals, raising four issues for this Court's review.

I. INEFFECTIVE ASSISTANCE OF COUNSEL
In Zakrzewski's first two issues on appeal, he argues that his trial counsel were ineffective for failing to object to several comments made by the prosecutor during closing arguments and for failing to file a motion to suppress evidence taken from his home. This Court recently summarized the defendant's burden in establishing a claim of ineffective assistance of counsel:
To establish a claim that defense counsel was ineffective, a defendant must establish deficient performance and prejudice, as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Rutherford v. State, 727 So.2d 216, 218 (Fla.1998). As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. See Strickland, 466 U.S. at 688[, 104 S.Ct. 2052]. Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. See id. at 694[, 104 S.Ct. 2052]; Rutherford, 727 So.2d at 220.
Gore v. State, 846 So.2d 461, 467 (Fla.2003) (parallel citations omitted). Further, "when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001). As explained by this Court in Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.1999), both the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), are mixed questions of law and fact, and the Court will give deference to the trial court's findings of fact that are supported by competent, substantial evidence. We address Zakrzewski's two ineffective assistance of counsel claims separately below.

A. Failure to Object to the Prosecutor's Comments During Closing Argument
Zakrzewski claims that defense counsel should have objected to several comments made by the prosecutor during the State's closing argument. This Court has recognized that "the decision not to object to improper comments is fraught with danger... because it might cause an otherwise appealable issue to be considered procedurally barred." Chandler v. State, 848 So.2d 1031, 1045 (Fla.2003). However, this Court has also noted that "a decision not to object to an otherwise objectionable comment may be made for strategic reasons." Id.; see also Ferguson v. State, 593 *693 So.2d 508, 511 (Fla.1992) ("The decision not to object is a tactical one."); McCrae v. State, 510 So.2d 874, 878 (Fla.1987) ("Whether to object to an improper comment can be a matter of trial strategy upon which a reasonable discretion is allowed to counsel.").
After holding an evidentiary hearing, the trial court found that Zakrzewski's trial counsel, Issac Bruce Koran and Elton Killam, both had "vast experience in criminal defense" and "during the course of the penalty phase and throughout closing arguments... utilized a defense strategy and used their judgment to make a reasoned strategic decision on whether to object or not to the prosecutor's statements during closing argument." Thus, the trial court concluded that defense counsel's performance was not deficient. We agree with this determination.
Significantly, with respect to defense counsel's performance during the entire penalty phase proceeding, Zakrzewski's only claim of ineffectiveness is based on defense counsel's failure to object to specific comments made during the prosecutor's closing argument. Our review of the entire penalty phase demonstrates that defense counsel presented substantial mitigation through both lay and expert witnesses, and presented a thorough penalty phase closing argument.
Further, during the prosecutor's closing argument, defense counsel did object and motion for a mistrial when the prosecutor asked the jury to imagine the terror and horror Anna must have felt when she was forced down into the bath tub with her brother's "mutilated body." Both Killam and Koran testified at the evidentiary hearing that they did not object to the identified comments based either on strategy or a belief that a particular comment was unobjectionable. The trial court found that these experienced trial lawyers did in fact make reasonable strategic decisions regarding the failure to object and, thus, trial counsel's performance was not deficient. Cf. Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (quoting Strickland and reiterating that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). In light of the entire record in this case and trial counsel's overall performance during the penalty phase, we conclude that Zakrzewski has failed to demonstrate deficient performance regarding his trial counsel's failure to object to comments during closing argument. Thus, we affirm the trial court's denial of relief on this claim.

B. Failure to Move to Suppress Evidence
Zakrzewski also contends that his trial counsel were ineffective for failing to file a motion to suppress the evidence taken from his home. Specifically, Zakrzewski contends that the motion to suppress would have been meritorious because the initial entry into the home was done without a search warrant and that the fruits of the initial entry were used in obtaining the search warrant.
Although warrantless searches and seizures are generally prohibited by the Fourth Amendment to the United States Constitution and article I, section 12 of the Florida Constitution, police may enter private premises and conduct a search without a warrant if "exigent circumstances" exist. See Rolling v. State, 695 So.2d 278, 293 (Fla.1997). After an evidentiary hearing the trial court denied relief on this issue, finding
that the search of the home was justified under the exigent circumstances exception to the warrant requirement. Thus, the Defendant has failed to establish *694 that counsel's failure to file a motion to suppress was an error so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment and the Defendant failed to establish that counsel's errors were so serious as to result in prejudice to the Defendant. Trial counsel made a reasoned informed strategic decision not to file a motion to suppress the evidence seized from the Defendant's home; and, the Defendant has failed to establish either prong of the Strickland test pursuant to Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).
The United States Supreme Court explained in Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), that the two-part test of Strickland applies to claims of ineffective assistance of counsel arising out of the plea process. See also Stano v. State, 520 So.2d 278, 280 n. 2 (Fla.1988) (recognizing the Hill decision); Williams v. State, 717 So.2d 1066, 1066 (Fla. 2d DCA 1998) ("A trial attorney's failure to investigate ... a defense relying on the suppression of evidence, which results in the entry of an ill-advised plea of guilty ... constitute[s] a facially sufficient attack upon the conviction."). However, in order to establish the prejudice prong of Strickland the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. 366.[6] In addition, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious." Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).
In this case, Koran stated during the evidentiary hearing that he did not file a motion to suppress because he felt it would have been "a futile exercise." Koran explained that he believed that any motion to suppress would have been denied based on the exception to the warrant requirement for exigent circumstances. Similarly, Killam testified that he did not consider filing a motion to suppress the evidence taken from Zakrzewski's home. Although Killam's primary responsibility was to present mitigation during the penalty phase, he did discuss the idea of a motion to suppress with Koran and both were convinced that such a motion would have been unsuccessful.
Harold Mason, Zakrzewski's Air Force Sergeant at the time of the murders, described the events that led up to the police entry into Zakrzewski's residence. Mason testified that he became concerned when Zakrzewski failed to report for class on June 13, 1994. After attempting to locate Zakrzewski by calling Zakrzewski's home, the hospitals, the Sheriff's Office and the local police, Mason went to Zakrzewski's home, where he noticed a broken window and accumulated mail. After speaking with neighbors, who gave differing accounts of when they had last seen Zakrzewski, Mason called the Okaloosa County Sheriff's Office and requested that a deputy meet him at Zakrzewski's home. When Deputy Robert Baczek arrived, Mason related his attempt to locate Zakrzewski and indicated that he was concerned by Zakrzewski's absence.
Deputy Baczek testified that after talking with Mason and making his own assessment *695 of the situation, he "feared for the welfare of whomever may have been in the house at that time, thinking that there may have been a burglary, the family may have been on vacation, or something like that." Deputy Baczek told dispatch that he "was going to enter the house through the broken window to check on the welfare and see if there had been any kind of burglary inside." Thus, Deputy Baczek did not enter Zakrzewski's home with the intent to seize evidence or make an arrest.
Based on the evidence presented at the evidentiary hearing, the record in this case and the trial court's factual findings, we conclude that Zakrzewski has failed to establish deficient performance as a result of his defense counsel's failure to file a motion to suppress. However, even if counsel's performance were deficient, we conclude that Zakrzewski has failed to establish that but for counsel's errors, he would not have pled guilty. Although Zakrzewski alleged prejudice in his motion; i.e., that he would not have pled guilty, there was no evidence presented at the evidentiary hearing to establish this allegation and no reason to assume that had the motion been denied, Zakrzewski would not have still pled guilty, reserving the right to appeal. See generally Fla. R.App. P. 9.140(b)(2)(A)(i) ("A defendant who pleads guilty ... may expressly reserve the right to appeal a prior dispositive order of the lower tribunal...."). Accordingly, we affirm the trial court's denial of relief on this claim.

II. VOLUNTARINESS OF ZAKRZEWSKI'S GUILTY PLEAS
Zakrzewski next argues that the trial court erred in finding that his guilty pleas to the three murders were voluntary. The law is that "[a] plea of guilty must be voluntarily made by one competent to know the consequences of that plea and must not be induced by promises, threats or coercion." Porter v. State, 564 So.2d 1060, 1063 (Fla.1990) (quoting Mikenas v. State, 460 So.2d 359, 361 (Fla.1984)). Zakrzewski does not assert that he did not understand the consequences of his pleas, but claims that his guilty pleas were involuntary due to his counsel's unfulfilled promise that the crime scene photographs showing his wife and children would not be shown to the jury during the penalty phase.[7]
In denying this claim, the trial court found

that the testimony of Mr. Koran and Mr. Killam regarding their discussions with the Defendant regarding the introduction of the crime scene photographs of victims is credible. Both Mr. Koran and Mr. Killam empathetically deny that they assured the Defendant that the photographs would be suppressed. The Defendant was told that he was "entitled to a trial on the case and if he wanted to contest his guilt, he could;" however, he chose to plead guilty and counsel believed that "he understood this was his best option." Counsel testified that they had discussions with the Defendant regarding the presentation of evidence during the penalty phase and a motion was filed to try to limit the crime scene photographs that were shown to the jury; however, at no time was the Defendant ever told that the evidence would be excluded.

*696 Moreover, prior to the Defendant pleading guilty in open court, the Court made the decision to determine the admissibility of the crime-scene photographs when tendered for admission into evidence during the penalty phase proceeding. The Defendant then entered his pleas of guilty and indicated that he had read and understood his written plea agreement, which contained no promise that the photographs would be excluded. The Court has had the opportunity to observe the Defendant on the witness stand and believes that the Defendant is intelligent and fully understood the plea agreement and the discussions with his counsel concerning the admissibility of the crime-scene photographs.

(Emphasis supplied.)
Although Zakrzewski testified that he pled guilty to the three murder charges based solely on counsel's promise that the photographs of the bodies of his wife and children would not be introduced into evidence, both Koran and Killam testified that they in no way said anything to Zakrzewski that could have been mistaken for such a promise and had in fact never successfully obtained suppression of all photos of a homicide victim. Further, Zakrzewski has expressly stated that he does not contend that either Koran or Killam testified falsely at the evidentiary hearing. Rather, Zakrzewski asks this Court to reverse the trial court's findings on this issue based on his assertion that he is also a credible witness and that Koran and Killam simply do not recall making the promise about the suppression of the photos.
"Findings on the credibility of evidence by a lower court are not overturned if supported by competent, substantial evidence." Roberts v. State, 840 So.2d 962, 973 (Fla.2002). Here, the trial court not only found Killam's and Koran's testimony to be credible, but further found that Zakrzewski fully understood both the plea agreement and his discussions with counsel about the admissibility of the photographs. The trial court's factual findings are supported by competent, substantial evidence presented at the hearing. The findings are also supported by the original trial record, which indicates that Zakrzewski was present when the trial court deferred ruling on the motion to suppress, just prior to Zakrzewski entering his pleas in open court. For all these reasons, we conclude that Zakrzewski has not demonstrated that his guilty pleas were involuntary, and we affirm the trial court's denial of relief on this claim.

III. APPRENDI AND RING

In his last issue on appeal, Zakrzewski argues that Florida's death penalty statute, section 921.141, Florida Statutes (2002), is unconstitutional pursuant to Apprendi v. New Jersey 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), this Court denied relief under Ring. Subsequently, this Court has rejected postconviction challenges to section 921.141 based on Apprendi and Ring. See, e.g., Wright v. State, 857 So.2d 861, 867 (Fla. 2003); Jones v. State, 855 So.2d 611, 616 (Fla. 2003); Chandler v. State, 848 So.2d 1031, 1034 n. 4 (Fla.2003).
In addition, Zakrzewski's guilty pleas in this case are equivalent to convictions on three counts of first-degree murder. See Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; *697 nothing remains but to give judgment and determine punishment."). Thus, the prior violent felony or capital felony conviction aggravator exempts this case from the requirement of jury findings on any fact necessary to render a defendant eligible for the death penalty. See Duest v. State, 855 So.2d 33, 52 (Fla.2003); see also Doorbal v. State, 837 So.2d 940, 963 (Fla.) (stating that prior violent felony aggravator based on contemporaneous crimes charged by indictment and on which defendant was found guilty by unanimous jury "clearly satisfies the mandates of the United States and Florida Constitutions"), cert denied, ___ U.S. ___, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003).

CONCLUSION
Based on the forgoing, we affirm the trial court's order denying Zakrzewski's motion for postconviction relief.
It is so ordered.
WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
ANSTEAD, C.J., concurring in part and dissenting in part.
I concur in the majority opinion in all respects with the sole exception of its discussion of the U.S. Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
[2] The nonstatutory mitigators considered, found, and weighed by the trial court were: (1) the defendant is an exceptionally hard worker (significant weight); (2) the defendant was on the Dean's List in his third year of college (significant weight); (3) the defendant served in an exemplary manner in the United States Air Force (significant weight); (4); the defendant showed severe grief and remorse (substantial weight); (5) the defendant was a loving husband and father until the offense (substantial weight); (6) the defendant turned himself in (little weight); (7) the defendant pled guilty (little weight); (8) the defendant was under great stress due to work, college, child care, housework, and lack of sleep (little weight); (9) the defendant is a patient and humble man (little weight); (10) the defendant was raised without his natural father in his home (little weight); (11) the defendant had a lack of prior domestic relationships (little weight); (12) the defendant received little religious upbringing (little weight); (13) the defendant has embraced the Christian faith since the offense (little weight); (14) the defendant exhibited good behavior while hiding for an extended period of time under an assumed name (slight weight); (15) the defendant was a hyperactive child and was medicated on Ritalin (no weight); (16) the defendant has a long term adjustment disorder (no weight); (17) the defendant was suffering from a major depressive episode (no weight); (18) the defendant has potential for rehabilitation (no weight); (19) the defendant's role in his marriage was passive in a union dominated by his wife (no weight); (20) the defendant was a loving and good son (no weight); (21) the defendant is intelligent (no weight); (22) the defendant is well thought of by friends, neighbors, and coworkers (no weight); (23) the defendant was impaired by alcohol at the time of the offense (no weight); and (24) the defendant is not a psychopath (no weight).
[3] These were: (1) the trial court erred by finding HAC; (2) the trial court erred by finding CCP; (3) the death sentences were not proportionate in this case; (4) the trial court erred in overriding the jury's recommendation of life for the murder of Anna; (5) the trial court erred in allowing prejudicial photographs of the victims to be admitted into evidence; (6) the trial court erred in permitting the State's mental health expert to testify about philosopher Friedrich Nietzsche and his views on Christianity; (7) the trial court erred in permitting the State's mental health expert to testify because the testimony did not rebut the testimony of Zakrzewski's mental health expert; (8) the trial court erred in failing to instruct the jury that Zakrzewski's ability to understand his conduct was substantially impaired; and (9) the trial court erred in failing to instruct the jury on each of Zakrzewski's nonstatutory mitigating factors. See Zakrzewski, 717 So.2d at 492.
[4] Huff v. State, 622 So.2d 982, 983 (Fla.1993).
[5] Zakrzewski withdrew his third claim, and the parties agreed that the Apprendi issue did not require an evidentiary hearing.
[6] The State argues that Zakrzewski failed to adequately allege prejudice. However, Zakrzewski did assert in his motion for postconviction relief that had counsel informed him of his right to challenge the search of his home he would not have accepted counsel's advice to plead guilty.
[7] Zakrzewski also claims that his pleas were involuntary due to defense counsel's ineffectiveness in failing to move for suppression of the evidence removed from his home. Having concluded that Zakrzewski failed to establish that counsel was ineffective in this regard, we reject this claim without further discussion.