# Supreme Court of Florida

_____

No. SC14-582
_____

**DANE PATRICK ABDOOL**,
Appellant,

vs.

**STATE OF FLORIDA**,
Appellee.

_____

No. SC14-2039
_____

**DANE PATRICK ABDOOL**,
Petitioner,

vs.

**JULIE L. JONES, etc.**,
Respondent.

[April 6, 2017]

PER CURIAM.

Dane Patrick Abdool appeals the denial of his motion to vacate his

conviction of first-degree murder and sentence of death filed under Florida Rule of

Criminal Procedure 3.851, and he also petitions this Court for a writ of habeas

corpus.[1] For the reasons that follow, we affirm the denial of Abdool's

postconviction guilt phase claims and deny his guilt phase habeas claim, but we

vacate his death sentence and remand for a new penalty phase.

## I. BACKGROUND

The facts of this case were fully set out in this Court's opinion on direct

appeal. See Abdool v. State, 53 So. 3d 208 (Fla. 2010). Briefly, between the late-

evening hours of February 24, 2006, and the early-morning hours of February 25,

2006, after the two engaged in consensual sex, 19-year-old Abdool drove 17-year-

old Amelia Sookdeo to a remote area, bound her with duct tape, doused her with

gasoline, and set her on fire, causing her death. Id. at 213-14.

On February 19, 2008, after hearing the evidence summarized in this Court's

decision on direct appeal, including Abdool's statement to police implicating

himself in the victim's death, testimony by others as to incriminatory statements

Abdool had made to them before and after the victim's murder, and physical and

DNA evidence tying Abdool to the scene, Abdool's jury found him guilty of first-

degree murder. Id. at 212-14. The next day, the penalty phase commenced, and as

this Court explained in its decision on direct appeal, "the State presented the

testimony of an expert medical witness who described for the jury the type of

---

1. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. Because we remand for a new penalty phase, we do not address Abdool's penalty phase claims.

intense pain and suffering Amelia experienced before she died," as well as victim impact statements from three of the victim's family members. Id. at 214.

During the penalty phase, the defense presented testimony from several of Abdool's relatives and friends, which established that "Abdool grew up in a faith-based home with his mother and stepfather, who loved and cared for him and provided for his needs." Id. As this Court stated in its opinion on direct appeal, "[i]t was clear from their testimonies that Abdool is well-liked by friends and acquaintances and much loved by his family." Id.

In addition, the defense presented expert testimony from Nancy Cowardin, who "evaluated Abdool to determine his level of education." Id. Ms. Cowardin testified that, while "Abdool's IQ is in the normal range[,] he has attention deficit disorder, dyslexia, and a mild learning disability and that he reads and does math at the level of a ten- to eleven-year-old or someone who is in the sixth grade." Id. at 215. Ms. Cowardin further testified "that she could not make a connection between her conclusions regarding Abdool's educational level and the crime, but that kids with learning disabilities can make social blunders and can 'misthink things through.' " Id.

In addition to Ms. Cowardin, the defense presented expert testimony from Dr. Karen Gold, a clinical and forensic psychologist:

> Dr. Gold testified that she met with Abdool on three occasions and performed numerous tests and evaluations. In relevant part, Dr. Gold

- 3 -

testified that Abdool is immature, is intellectually limited but not retarded, has attention deficit disorder, is hyperactive, has impulse control issues and obsessive compulsive disorder, is meticulous, and has grandiose delusions, and that his emotional age is younger than his actual age.  Dr. Gold also stated that Abdool knew right from wrong and that he was competent to stand trial.

Id.

In rebuttal, the State presented the testimony of Dr. Daniel Tressler, a forensic psychologist, "who stated that in his opinion, Abdool did not have impulse control disorder[,] that there was no evidence that he was substantially impaired at the time of his offense," and that "Abdool knew the difference between right and wrong."  Id.  Dr. Tressler further "concluded that Abdool's actions were not caused by any of his personality disorders."  Id.

Following the penalty phase presentation, the jury recommended death by a vote of ten to two.  Id.  After conducting a Spencer[2] hearing, at which no additional evidence was presented, the trial court followed the jury's recommendation and sentenced Abdool to death, finding that the aggravating circumstances[3] outweighed the mitigating circumstances.[4]  Id. at 215-16.

---

2. Spencer v. State, 615 So. 2d 688 (Fla. 1993).

3. The trial court found the heinous atrocious or cruel (HAC) and cold, calculated, and premeditated (CCP) aggravators.

4. The trial court found four statutory mitigating circumstances:  (1) no significant history of prior criminal activity (moderate weight); (2) the capital felony was committed while the defendant was under the influence of extreme

- 4 -

mental or emotional disturbance (little weight); (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (little weight); and (4) the age of the defendant (19) at the time of the crime (moderate weight). It also found the following 48 nonstatutory mitigating circumstances and afforded them very little to moderate weight:

> Abdool (1) voluntarily spoke with law enforcement officers (very little weight); (2) ultimately took responsibility for his actions (very little weight); (3) had a biological father who was an alcoholic (very little weight); (4) had a biological father who was a gambler (very little weight); (5) is hyperactive and has attention deficit disorder (little weight); (6) is developmentally delayed (moderate weight); (7) repeated the third grade (little weight); (8) was affected by his parent's divorce (little weight); (9) moved to the United States at a young age (very little weight); (10) is estranged from his biological father (very little weight); (11) is intellectually dull (moderate weight); (12) was not placed in a special education class (little weight); (13) has arrested development and social skills (moderate weight); (14) is emotionally underage (moderate weight); (15) has islets of ability (very little weight); (16) was affected by having to repeat the ninth grade (very little weight); (17) is free from prejudice (very little weight); (18) was unable to successfully complete classes to obtain a GED (very little weight); (19) is a good student in welding (very little weight); (20) was Baker Acted after a 2004 automobile accident (very little weight); (21) moved in with his uncle temporarily due to family tension (very little weight); (22) suffers from obsessive compulsive disorder symptoms (little weight); (23) has features of borderline personality disorder (very little weight); (24) has grandiose delusions (very little weight); (25) suffers from impulse control disorder (very little weight); (26) has communication disorder features (very little weight); (27) is a good soccer player (very little weight); (28) has attention deficit disorder (little weight); (29) has learning disabilities (moderate weight); (30) suffers from dyslexia (very little weight); (31) has processing glitches (moderate weight); (32) functions on a fourth to sixth grade level (moderate weight); (33) misthinks things through (moderate weight); (34) has low self-esteem (very little weight); (35) was a poor student (moderate weight); (36) has the love and support of family (little weight); (37) was taunted by

On direct appeal,[5] this Court affirmed Abdool's conviction and death

sentence.  Id. at 212.  Thereafter, the United States Supreme Court denied

Abdool's petition for a writ of certiorari.  Abdool v. Florida, 132 S. Ct. 149 (2011).

---

other kids for being held back in school (very little weight); (38) suffered from depression (very little weight); (39) dropped out of high school (very little weight); (40) has a good relationship with siblings (very little weight); (41) is unable to function independently of his family (little weight); (42) suffers from separation anxiety disorder (little weight); (43) is a victim of racial bias (very little weight); (44) experiences feelings of inadequacy when compared to his younger brother (very little weight); (45) failed to pass the FCAT (very little weight); (46) is a responsible trusted employee (very little weight); (47) is a model inmate (very little weight); (48) demonstrated good behavior at trial (very little weight).

Abdool, 53 So. 3d at 215 n.6.

5.  Abdool raised the following claims on direct appeal:

(A) the trial court erred in denying his motion for judgment of acquittal because the evidence did not prove premeditation; (B) the trial court erred in allowing Detective Bobby Gammill to state his opinion on whether Amelia's death was accidental; (C) the trial court erred by allowing the State to call the victim's father because he presented no relevant evidence; (D) the trial court erred by ordering defense counsel to turn over the raw data used by its mental health expert prior to the penalty phase; (E) the prosecutor elicited improper, inflammatory, and irrelevant evidence during the penalty phase, rendering the proceeding unfair; (F) the victim impact evidence was irrelevant and prejudicial and denied Abdool due process; (G) the trial court improperly found CCP and failed to consider weighty mitigation; (H) the death sentence is not proportionate; and (I) Florida's capital sentencing scheme is unconstitutional under Ring[ v. Arizona, 536 U.S. 584 (2002)].  In addition, [this Court] consider[ed] (J) whether the evidence is sufficient to support the conviction.

Abdool, 53 So. 3d at 216 (footnote omitted).

In 2012, Abdool filed a motion for postconviction relief. Following an evidentiary hearing, the circuit court denied relief on all claims. Abdool appeals the circuit court's denial of postconviction relief and also petitions this Court for a writ of habeas corpus.

## II. POSTCONVICTION MOTION

### A. Ineffective Assistance During the Guilt Phase

Abdool first argues that his trial counsel was ineffective during the guilt phase for (1) failing to file a motion to suppress his statement to police; (2) failing to address the issues of racism and religious prejudice during jury selection; and (3) failing to consult and retain an independent arson expert.[6] For the reasons below, we affirm the circuit court's denial of relief on these claims.

### (1) Motion to Suppress

Abdool first argues that his trial counsel was ineffective during the guilt phase for failing to file a motion to suppress his statement to police, in which Abdool admitted responsibility for the victim's death, and which the State also

---

6. In addition, Abdool argues that his trial counsel was ineffective for failing to argue that the police violated his rights, as a Trinidadian National, under the Vienna Convention. However, this claim is procedurally barred, as we have held it is properly raised on direct appeal. See Valle v. State, 70 So. 3d 530, 552 (Fla. 2011) (holding the defendant's claim under the Vienna Convention "is procedurally barred because [he] could and should have raised it on direct appeal").

used in support of its argument that the CCP and HAC aggravators applied to Abdool's case. Because Abdool has not established that he was prejudiced by trial counsel's alleged deficiency, we affirm the circuit court's denial of this claim, without addressing whether trial counsel was deficient.

Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668 (1984), this Court has explained that, to prevail on an ineffective assistance of counsel claim, a defendant must satisfy two requirements:

> First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

Bolin v. State, 41 So. 3d 151, 155 (Fla. 2010) (quoting Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986)).

Regarding Strickland's deficiency prong, there is a strong presumption that trial counsel's performance was not ineffective. Strickland, 466 U.S. at 689. Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. The defendant bears the burden to "overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Regarding the prejudice prong, "Strickland requires defendants to show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [A] 'reasonable probability' is a 'probability sufficient to undermine confidence in the outcome.' " Henry v. State, 948 So. 2d 609, 621 (Fla. 2006) (quoting Strickland, 466 U.S. at 694).

Because both prongs of Strickland present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So. 2d 766, 771-72 (Fla. 2004). Moreover, "when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." Zakrzewski v. State, 866 So. 2d 688, 692 (Fla. 2003) (quoting Waterhouse v. State, 792 So. 2d 1176, 1182 (Fla. 2001)).

Abdool has not established prejudice. The evidence that Abdool committed first-degree murder is not limited to his statement to police or its alleged fruits (most notably a surveillance video showing Abdool purchasing some of the items used in the murder while the victim waited in his car). Police linked tire tracks at

- 9 -

the scene to Abdool's vehicle, found Abdool's DNA on a glove at the scene, and discovered during their investigation that Abdool had suffered recent burns to his body. Further, several witnesses testified to statements that Abdool made prior to the murder indicating that he intended to harm or kill the victim. Then, after the murder, Abdool gave an account to a former coworker, which was consistent with his statement to police:

> [T]he coworker testified that Abdool told her that he and [the victim] were fighting, he kicked her out of the car, put duct tape on her to scare her, and she yelled at him to "do it, do it, do it." He said that [the victim] then gave him a lighter, which he only flicked to scare her, but that she came towards him and caught fire. He also stated that "a person can only go so far, can only take so much."

Abdool, 53 So. 3d at 213-14.

Just as Abdool's statement and its alleged fruits are not the only support for his conviction, other evidence supports the application of the CCP and HAC aggravators in his case. Abdool's use of a gas can, duct tape, and gloves and his act of driving the victim to a remote location, coupled with the fact that "Abdool spoke of killing [the victim] several months before the murder," id. at 223, are sufficient to support the CCP aggravator. Likewise, HAC was established not just by Abdool's statement to police that the victim ran around screaming after he set her on fire. In addition, Abdool's coworker's testimony regarding his statement to her established that the victim was conscious when the fire started, and evidence presented at trial established the victim's "lungs contained soot from inhaling her

- 10 -

own burning flesh, the pain she experienced from burning alive was immense, and experts testified that [she] could have remained conscious for seconds to a couple of minutes after she was set on fire." Id. at 225.

Given this other evidence of Abdool's guilt and in support of the CCP and HAC aggravators, Abdool has not established prejudice, namely a reasonable probability that he would have received a different result but for trial counsel's alleged deficiency. Our confidence in the outcome is not undermined. See Henry, 948 So. 2d at 621 (quoting Strickland, 466 U.S. at 694).

Accordingly, we affirm the circuit court's denial of relief on this claim.

### (2) Jury Selection

Abdool next argues that trial counsel was ineffective for failing to address the issues of racism and religious prejudice during voir dire because potential jurors might have assumed Abdool was Muslim and associated the victim's burning death with Muslim religious practices. We disagree because Abdool has not established deficiency or prejudice.

As the circuit court found, trial counsel's "decision not to inquire as to the potential jurors' anti-Muslim bias was a reasonable one, as the evidence at trial established that Mr. Abdool was a Christian from Trinidad, making it clear to the jury that it was unlikely he was associated with Middle Eastern terrorism." See Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000) ("Counsel cannot be

deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions. Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.") (citations omitted).

In any event, there is no prejudice. As the circuit court concluded, Abdool's claim that had trial counsel asked the right questions they could have uncovered juror bias toward Muslims (or perceived Muslims) is speculative since Abdool failed to establish that a biased juror actually served on the jury. Rather, the one juror who asked about Abdool's religious background during voir dire stated that he could give him a fair trial regardless of Abdool's religion or race, and this juror did not serve on the jury. See Carratelli v. State, 961 So. 2d 312, 324-25 (Fla. 2007) (holding a defendant must show an actually biased juror served to establish prejudice under Strickland); see also Jones v. State, 998 So. 2d 573, 584 (Fla. 2008) ("A mere conclusory allegation that the outcome would have been different is insufficient to state a claim of prejudice under Strickland; the defendant must demonstrate how, if counsel had acted otherwise, a reasonable probability exists that the outcome would have been different[.]").

Accordingly, we affirm the circuit court's denial of this claim.

- 12 -

## (3) Arson Expert

Abdool next argues that trial counsel was ineffective for failing to consult and retain an independent arson expert. He claims that, had trial counsel done so, trial counsel would have been able to rebut the testimony of the State's arson expert regarding how far away the ignition source was from the victim, the position of the victim when she was splashed with gasoline, and how many times gasoline was applied. Abdool contends that this evidence would support his argument that he accidentally set the victim on fire in an attempt to scare her. We affirm the circuit court's denial because Abdool has not established deficiency or prejudice.

This Court has explained that, in deciding whether trial counsel was deficient for failing to call an expert to rebut the State's expert, "a number of factors should be considered[:]"

> First among these are the attorney's reasons for performing in an allegedly deficient manner, including consideration of the attorney's tactical decisions. See State v. Bolender, 503 So. 2d 1247, 1250 (Fla. 1987); Lightbourne v. State, 471 So. 2d 27, 28 (Fla. 1985). A second factor is whether cross-examination of the State's expert brings out the expert's weaknesses and whether those weaknesses are argued to the jury. Card v. Dugger, 911 F.2d 1494 (11th Cir. 1990). See Rose v. State, 617 So. 2d 291, 297 (Fla. 1993)[.] The final factor is whether a defendant can show that an expert was available at the time of trial to rebut the State's expert. See Elledge v. Dugger, 823 F.2d 1439, 1446 (11th Cir. 1987).

State v. Riechmann, 777 So. 2d 342, 354 (Fla. 2000).

- 13 -

Examination of these factors supports the circuit court's conclusion that trial counsel was not deficient. First, as the circuit court concluded, trial counsel made a strategic decision not to consult an independent arson expert because "they did not want to highlight the burning death of [the victim] through the testimony of a second expert."

Second, trial counsel was able to bring out the weaknesses of the State's arson expert's testimony on cross-examination, namely that the State's expert could not testify conclusively that there was more than one application of gasoline, or that the fire ignited within inches of the victim as opposed to up to a foot away. The State's expert further acknowledged that, while he could not rule out the possible scenario that the victim was set on fire while she was standing and that additional gasoline was then added to her body, in his opinion there was only one heat source that ignited and spread to other parts of the body. Trial counsel also elicited from the State's expert that "there's no way of telling" why there were two different trails of scorched earth, weakening the State's argument that the two trails meant that Abdool doused the victim with gasoline more than once. In addition, the State's expert acknowledged the possibility of trial counsel's hypothetical suggesting that the fire could have been set by someone who splashed gasoline while wearing a glove, lit a lighter while still wearing the glove, causing the glove

to ignite, and then threw the glove in the direction where the gasoline had been splashed, accidentally igniting the vapors.

Last, although the arson expert Abdool retained for postconviction, John Lentini, was available to testify at trial, rather than rebut the trial testimony of the State's arson expert, he largely agreed with it. Specifically, during the postconviction evidentiary hearing, Mr. Lentini acknowledged that he could not identify anything in the State's expert's testimony with which he disagreed, and he further testified that "[a]ll of the conclusions and possible scenarios, that [the State's expert] testified about at trial . . . are all possible scenarios." Though Mr. Lentini testified that he "would have definitely directed counsel to ask better questions" had he been retained, he did not specify what those questions would have been and instead appeared to take issue more with the State's characterization of its expert's testimony rather than with the expert's testimony itself.

Accordingly, because trial counsel made a reasonable strategic decision to limit the jury's exposure to evidence regarding how the victim burned to death and brought out the weaknesses in the State's arson expert's testimony through cross-examination, trial counsel was not deficient. See Riechmann, 777 So. 2d at 355. But, in any event, because the expert Abdool faults trial counsel for failing to consult and retain actually provided information that is consistent with the testimony presented by the State's arson expert, there is no prejudice. See Henry,

948 So. 2d at 621 ("Strickland requires defendants to show 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . [A] 'reasonable probability' is a 'probability sufficient to undermine confidence in the outcome.' ") (quoting Strickland, 466 U.S. at 694).

## III. HABEAS PETITION

### A. Ineffective Assistance of Appellate Counsel

In his habeas petition, Abdool argues that appellate counsel was ineffective for failing to argue on direct appeal that the police violated his rights, as a Trinidadian National, under the Vienna Convention. We disagree.

Ineffective assistance of appellate counsel claims are properly presented in a petition for a writ of habeas corpus. Wickham v. State, 124 So. 3d 841, 863 (Fla. 2013). "The standard of review for ineffective appellate counsel claims mirrors the Strickland standard for ineffective assistance of trial counsel." Id. Specifically, to be entitled to habeas relief on the basis of ineffective assistance of appellate counsel, the defendant must establish

> [first, that] the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, [that] the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.

Bradley v. State, 33 So. 3d 664, 684 (Fla. 2010) (quoting Pope v. Wainwright, 496 So. 2d 798, 800 (Fla. 1986)). Further, "appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims on appeal." Valle v. Moore, 837 So. 2d 905, 908 (Fla. 2002).

Abdool's Vienna Convention claim is without merit, as we have consistently rejected virtually identical claims, and Abdool offers no reason why we should recede from our precedent. See Maharaj v. State, 778 So. 2d 944, 959 (Fla. 2000) (concluding defendant "failed to establish that he has standing [to bring Vienna Convention claim], as treaties are between countries, not citizens"); Conde v. State, 860 So. 2d 930, 953 (Fla. 2003) ("[E]ven if [the defendant] had standing to assert a right to consular assistance under the Vienna Convention and were to show that right was violated, this would not be grounds for suppression of an otherwise voluntary confession."). Accordingly, as appellate counsel cannot be ineffective for failing to raise a meritless claim, see Valle, 837 So. 2d at 908, we deny relief.

## IV. **Hurst**

Next, we consider whether Abdool is entitled to relief after the United States Supreme Court issued its decision in Hurst v. Florida, 136 S. Ct. 616 (2016). Because the jury recommended the death penalty by a vote of ten to two, we conclude that Abdool's death sentence violates Hurst. See Kopsho v. State, 209

So. 3d 568, 570 (Fla. 2017). We must then consider whether the <u>Hurst</u> error was harmless beyond a reasonable doubt:

> The harmless error test, as set forth in <u>Chapman</u>[v. California, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

<u>Hurst v. State</u>, 202 So. 3d 40, 68 (Fla. 2016) (quoting <u>State v. DiGuilio</u>, 491 So. 2d 1129, 1138 (Fla. 1986)), <u>petition for cert. filed</u>, No. 16-998 (U.S. Feb. 13, 2017).

Because the jury in this case recommended death by a vote of ten to two, "we cannot determine that the jury unanimously found that the aggravators outweighed the mitigation." <u>Kopsho</u>, 209 So. 3d at 570. "We can only determine that the jury did not unanimously recommend a sentence of death." <u>Id.</u> Therefore, because we cannot say that there is no possibility that the error did not contribute to the sentence, the error in Abdool's sentencing was not harmless beyond a reasonable doubt.

Accordingly, we vacate the death sentence and remand for a new penalty phase. <u>See Hurst</u>, 202 So. 3d at 69.

## V. CONCLUSION

For the foregoing reasons, we affirm the denial of Abdool's guilt phase claims, but we remand for a new penalty phase pursuant to Hurst.[7]

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's decision except its vacating of the death sentence pursuant to Hurst.

CANADY and LAWSON, JJ., concur.

An Appeal from the Circuit Court in and for Orange County,
    Lisa Taylor Munyon, Judge - Case No. 482006CF002848000AOX
And an Original Proceeding – Habeas Corpus

James V. Viggiano, Capital Collateral Regional Counsel, and Julissa Fontán, Maria E. DeLiberato, and Chelsea Rae Shirley, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant/Petitioner

---

7. We also affirm the trial court's denial of his cumulative error claim. See Lynch v. State, 2 So. 3d 47, 86 (Fla. 2008) ("[The appellant] is not entitled to relief on his cumulative error claim because the alleged individual claims of error are all without merit, and, therefore, the contention of cumulative error is similarly without merit.") (quoting Dufour v. State, 905 So. 2d 42, 65 (Fla. 2005)).

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Scott A. Browne, Senior Assistant Attorney General, Tampa, Florida,

for Appellee/Respondent